## Case No. 8,731.

### McCOY v. WASHINGTON COUNTY.

[3 Wall. Jr. 381:[1] 7 Am. Law Reg. 193; 3 Phila. 290: 15 Leg. Int. 388.]

Circuit Court, W. D. Pennsylvania. April Term. 1862.

MUNICIPAL RAILROAD BONDS AND COUPONS — COURTS—SUIT AGAINST COUNTY—VALIDITY OF ACT EMPOWERING COUNTY.

1. A county may be sued in the United States courts.

[Cited in Vincent v. Lincoln Co., 30 Fed. 750.]

2. Where bonds issued by a county in order to aid the construction of a railroad, covenant to pay to the holder thereof, the county is liable directly to the holder. who may sue in his own name, notwithstanding as between the railroad company and the county it is agreed that the company shall pay the bond.

3. So, too. the holder, if otherwise entitled to sue in the circuit court may sue there, although the bonds were issued to a railroad in the same state as the county was, and which, therefore, could not have sued in the circuit court. The plaintiff claims as holder, not as assignee.

4. The act of the Pennsylvania legislature, of 12th April. 1851. authorizing Washington county to subscribe to railroads, having been declared constitutional by the supreme court of that state, is to be regarded in the federal courts as constitutional, and the action of the county commissioners in conformity therewith is binding on the county.

5. The constitution of the United States does not forbid states or counties from borrowing money and giving proper securities therefor, and such securities are not bills of credit within the meaning of the constitution.

6. Nor is a law authorizing them, a law impairing the obligation of a contract, or one violating the fundamental principles of "republican government" within the meaning of that instrument.

7. Nor is the bill which finally becomes such a law, "a money or revenue bill" within the meaning of the constitution of Pennsylvania, which requires such bills to originate in the house of representatives.

8. The coupons to coupon bonds payable to bear·er are to be taken in connection with the bonds to which they are annexed. and though. not themselves. in the form of instruments negotiable by the law merchant, nor payable to any particular person. on his order, or even to bearer, they yet partake of the instrument to which they are attached, and when it is negotiable they too

[1] [Reported by John William Wallace, Esq., and here reprinted by permission.]

pass by delivery and become, from established usage, sufficient to establish the indebtedness of the county to the holder.

[Cited in Aurora v. West, 7 Wall. (74 U. S.) 105.]

[Cited in Smith v. Clark Co., 54 Mo. 66; Evertson v. National Bank of Newport, 66 N. Y. 21; Goodwin v. Bath, 77 Me. 462, 1 Atl. 245.]

9. The possession of the coupons of coupon bonds, is prima facie evidence that the holder of them is holder of the bond. or at least was so when they were cut off, and as such entitled to receive the interest; and they may be declared on without in any way declaring on the bond from which they have been cut.

[Cited in Chicago B. & Q. R. Co. v. Otoe Co.. Case No. 2,667; Kennard v. Cass Co., Id. 7,697.]

[Cited in Deming v. Houlton, 64 Me. 262; Evertson v. National Bank of Newport. 66 N. Y. 21; Goodwin v. Bath, 77 Me. 462, 1 Atl. 246.]

10. The effect of the bond cannot be varied by parol testimony.

11. Nor is it necessary in a suit on bonds, authorized by statute to be issued by a county subscribing to railroad stock, to show an actual subscription in the manner prescribed by the statute, or that a certificate of railroad stock issued. It is enough if the bond have been delivered in payment of a subscription authorized, and when the bond recites that it issued in such payment, the presumption is that it did so, and that the county got, or can get, a certificate. A county cannot plead negligence of its own agents, in the management of its own business to avoid payment of its obligations.

This was an action of debt for interest due on certain "coupon bonds," issued by the commissioners of Washington county, Pennsylvania. The declaration set forth, that the defendants "made certain coupon warrants, or promises to pay, in writing," in the form following: "Washington County Bonds— Warrants for thirty dollars interest on bond No. 108, payable in the city of New York, on the 15th of May, 1857. For the commissioners, A. Silvy, Clerk." Sixty of these coupons, for $30 each, payable at different dates, were asserted to be due and owing to the plaintiff as lawful holder. The defendants pleaded they did not assume, and were not so indebted. To support the issue, the plaintiff has given in evidence—

1. An act of assembly passed on the 12th of April, 1851 [Laws Pa. 1851, p. 470], which, in sections 7, 8, 9 and 10, authorized the citizens of Washington, at the next, or some subsequent general election, to decide by ballot whether or not the commissioners of said county should subscribe, in its behalf, 4,000 shares in the capital stock of the Hempfield Railroad Company, the returns of this election to be certified to the court of quarter sessions, and if the judges thereof ascertained that there was a majority in favor of such subscriptions, they should make an order on the commissioners to make the subscription. The commissioners were authorized to borrow money to pay the subscription, and to execute bonds or promissory notes in the name of the county, transferable on the books of the commissioners, these bonds to

bear an interest of six per cent., payable semi-annually, and to be received as cash by the Hempfield Railroad Company, in payment of instalments. No bond or note was to be for a less sum than $100. The plaintiff gave in evidence, also, a certificate from the court of quarter sessions, showing that such election was held, and that the citizens of Washington had decided, by a large majority of votes, in favor of making such subscription. The will of the people of Washington county being thus ascertained, another act of assembly was passed on the 12th of February, 1852, authorizing the commissioners to subscribe 4,000 shares to the capital stock of the company; to borrow money in behalf of the county, and to make provision for the payment of the principal and interest of the money so borrowed, as in other cases of loans to corporations. The commissioners were authorized also to issue certificates of loan or bonds in the name of the county, bearing an interest of six per cent., payable semi-annually, and transferable as might be directed by the commissioners. The railroad company were to receive these bonds as cash in payment of the stock subscribed; "and the said company are also to pay or provide for the payment of the interest accruing upon said certificates of loan or bonds, until the said railroad shall be completed." The railroad company was moreover authorized to guarantee the payment of the principal and interest of the bonds. In pursuance of this authority the commissioners executed and delivered to the railroad company 200 bonds of $1000 each, and fifty of $500 each, payable to bearer, with guarantee of the railroad company, with interest coupons annexed, in the form above given. The bonds stipulated for the payment of the interest semi-annually on presentation of the coupons. The plaintiff produced the bonds to which the coupons were attached with the exception of seventeen. Their execution was proved and admitted, and that they were delivered to the railroad company in payment for stock and to be used by them to raise money for the construction of the road. There was no allegation, or proof of any fraud practiced by the parties in the transaction. The liability of Washington county on the coupons, was elaborately argued by counsel, and numerous requests for particular instructions asked in behalf of the county.

Geo. P. Hamilton, for plaintiffs.

Messrs. Thomas Williams, Braden, and Hopkins, for defendants.

GRIER, Circuit Justice (charging jury). These bonds, to give them more value in the market, are made payable to the holder, and thus by contract made negotiable by delivery. If the commissioners had power to bind the county for the payment of the principal and interest of a bond, transferable by delivery, the coupons which are appended to them, are the appointed evidence, by the agreement of the parties to show who is entitled as holder of the bond to receive the interest due at a particular date. They are attached to the bonds for the convenience of the officers of the county, and to facilitate their negotiation, and thereby add to their commercial value. The obligation to pay the interest is to be found in the bond, not in the coupon. They are not in words an instrument in writing of a commercial nature, and having their negotiability by virtue of the law merchant. In terms these warrants are not made payable to any particular person or his order, or even to bearer. They partake of the nature of the peculiar instrument to which they are attached. They are intended by the parties to be evidence of debt in the hands of the holder, and proof of payment when in possession of the debtor. They pass by delivery, and by the contract of the parties and the usage of the country are sufficient evidence of a debt to the holder as against the obligors in the bond. They are of modern invention, and should have the effect intended by the parties and be governed by the usage of the country, and not by sharp rules of law applicable to instruments of a different nature. The possession of them is therefore primâ facie evidence, that the holder of them is holder of the bond (or was so at least, when they were cut off), and as such entitled to receive the interest. [The plaintiff has produced the bonds to which the coupons were attached, with the exception of seventeen. Their execution is proved and admitted, and that they were delivered to the railroad company in payment for stock and to be used by them to raise money for the construction of the road. There is no allegation, or proof of any fraud practiced by the parties in the transaction.][2] State v. Commissioners of Clinton Co., 6 Ohio St. 280. The plaintiff has shown a primâ facie title to recover, which will entitle him to your verdict, unless the defendant has established some sufficient defence, which we will now consider.

It is contended:

1st. "That the county of Washington being merely a subordinate political division of the state of Pennsylvania, is not a citizen of this state, within the meaning of the constitution or the act of congress, and therefore not suable in this court." To this we answer, that though the metaphysical entity called a corporation, may not be physically a citizen, yet the law is well settled, that it may sue and be sued in the courts of the United States, because it is but the name under which a number of persons, corporators and citizens may sue and be sued. In deciding the question of jurisdiction, the court look behind the name to find who are the parties really in interest. In this case, the parties to be affected by the judgment, are the peo-

---

[2] [From 7 Am. Law Reg. 193.]

ple of Washington county. That the defendant is a municipal corporation and not a private one, furnishes a stronger reason why a citizen of another state should have his remedy in this court, and not in a county where the parties against whom the remedy is sought, would compose the court and jury to decide their own case. This point is therefore overruled.

2d. It is objected, moreover, to the jurisdiction of the court—"That the present plaintiff being in the position of a mere assignee of the chose in action sued upon, and the same being a case wherein a suit could not have been prosecuted in this court to recover on the contract if no assignment had been made thereof, this court has, under the act of congress, no cognizance of a suit for the recovery thereof."

This would be a valid objection if the plaintiff claimed as endorsee of a citizen of the state of Pennsylvania. But he does not claim title through any such assignment, but as holder of the bond to whom the defendants have directly covenanted to pay the bond and interest. The indebtedness declared on, results from the peculiar nature of the security. The defendants have agreed to pay the interest to the holder of the bond, as well as the principal, and having not done so, they are directly indebted to such holder for refusing to pay according to contract.

The next defence is presented in the three following points:

3d. "That the county of Washington being a public corporation, erected for purposes of local government alone, and standing upon no contract between the legislature and the citizen—and the said Hempfield Railroad Company being a private corporation merely, organized for purposes of trade and commerce, and as a common carrier of merchandise and passengers beyond the limits of said county, the commissioners thereof were not, therefore, authorized to embark either the credit or property of the people of said county in the hazards of such an enterprise without their unanimous consent.

4th. "That if the same was done under the authority of an act of the legislature, and without such consent, the county commissioners were pro hac vice the agents of the legislature only, and the contract so made was not the contract of the people of the said county.

5th. "That as an exercise of mere power on the part of the legislature, in thus practically compelling the people of one county to build railroads in another, and taking the freehold of the citizen without his consent for such a purpose, by authorizing a heavy incumbrance thereupon, the said act of assembly was not a legitimate exercise of the taxing or of any legislative power, inconsistent with the principles of natural justice, with the rights of property, and the fundamental law of every free government, and at war with

the great principles enunciated in our declaration of rights, and equally at war with the spirit and letter of the constitution of the United States."

These three points may be said to contain a condensed argument against the constitutional power of the legislature to authorize the commissioners to bind the people of the county to pay debts incurred in these disastrous speculations.

This is the great question in the case, and if it were a new one which this court were compelled to decide without the light of precedents, we should feel oppressed with its magnitude and importance. But, happily, we are relieved from this responsibility. The supreme court of your state, the tribunal to whom alone is committed the high function of declaring the constitutional powers of the legislature, have decided this question, and, to that decision, this court, and all the good citizens of the commonwealth, are bound to submit, as the declared law of the land. Although, in the course of this trial, I may have expressed opinions which I possibly might have entertained, had I been compelled to meet this as a new question; as a member of this court, I must instruct you that the law in question is constitutional, and that the commissioners of the county had power and authority to bind the county in conformity with the provisions of the acts already referred to; and if the bonds have been so issued and put in circulation, the county is bound by law, as well as by every principle of moral rectitude, to pay them to the bonâ fide and honest holders. Without further enlarging on this subject, let me refer all who feel desirous to have correct opinions on this subject, in a moral point of view, to an opinion lately delivered by the learned and able chief justice of your state, in Com. v. Commissioners of Allegheny Co. (Lowry, C. J.) 8 Casey [32 Pa. St.] 218. Additional points made are these:

6th. "That if the instruments sued on here, or the bonds with which they are connected, were intended for circulation from hand to hand as a marketable commodity, they are bills of credit within the meaning of the prohibition contained in the first clause of the tenth section of the first article' of the constitution of the United States.

7th. "That the act of assembly of February 14th, 1852, authorizing the subscription by the commissioners of Washington county, to the capital stock of the Hempfield Railroad Company, if the same amounted in effect to a lien upon the freehold of the citizen who holds under a patent from the commonwealth, it is a law impairing the obligation of the contract between the state and the citizen, and is therefore in conflict with the first clause of the tenth section of the first article of the constitution of the United States.

8th. "That the said recited act of assembly, in assuming the power to take the

property of the citizen, without his consent, for a merely private purpose, is equally a violation of the fundamental principles of republican government, and is therefore in conflict with the fourth section of the fourth article of the constitution of the United States."

1. In answer to the first of these propositions, I instruct you that the constitution of the United States does not forbid states or corporations from borrowing money and giving proper securities therefor, and that such securities are not bills of credit, within the meaning of the constitution.

2. Nor does a law authorizing a county to borrow money to make a railroad on the credit of the county, and to be paid by the imposition of a tax on the citizens thereof, infringe that article of the constitution of the United States which forbids a state to make any "law impairing the obligation of contracts."

3. Nor is the act of assembly in question in violation of "the fundamental principles of republican government, and therefore not in conflict with any article of the constitution of the United States."

9th. The ninth proposition of the defendants is: "That if the act, under the authority of which this subscription is asserted to have been made, originated in the senate, then, upon the principles on which such legislation has been sustained in this state, the act itself, as a money or revenue bill, would be unconstitutional under the twenty-first section of the first article of the constitution of this state." To this I answer, that there is no evidence that said act originated in the senate; and if it did, it is not unconstitutional for that reason. It is not a bill to "raise revenue" for the state.

10th. The tenth instruction prayed for, is as follows: "That the instruments declared on, import no contract, in their terms, with the holder thereof by the defendant in this suit to pay the moneys referred to therein, and are not so executed as to charge the defendants under the laws of this state."

The coupons per se, "do not import a contract in their terms with the holder," but taken in connection with the bond to which they were attached, they do; and from the established usage and contract of the parties, they constitute the proper evidence of indebtedness to charge the defendants.

11th. Another instruction asked is this: "That if the papers in question were originally a part of a bond, or bonds, containing a stipulation for the payment of the interest referred to therein to the holder of the said bond, the remedy, if any, would be upon the bond itself, and the plaintiff must have set out and shown his ownership, and alleged an agreement on the part of the defendants to pay the same, in order to entitle him to recover."

This proposition is answered in the negative for reasons already stated. By the contract of the parties, these coupons are made evidence that the amount of interest stated is due from the county to the holder thereof.

12th. The twelfth instruction asked is: "That the bonds issued by the defendants in payment of their supposed subscription to the capital stock of the Hempfield Railroad, are to be construed in accordance with the terms of the act of assembly under which the same were issued, and that, under the said act, the defendants would not be liable for the payment of interest until the completion of said road."

To this we say: The commissioners had their authority from the act, and that act authorizes them to borrow money to pay for the stock to make provision for the payment of principal and interest, and to issue bonds in the name of said county, bearing an interest of six per cent., payable semi-annually. The provision that the railroad company should bind themselves to guarantee the principal and interest, and should pay it till the road is completed, does not annul the obligation of the bond; as between the county and the corporation, the county had a right to call on them to pay the interest. But as between it and the bondholders, the contract of the county is to pay both principal and interest. The guaranty of the railroad company adds to the security, but cannot detract from it. The commissioners have not misconstrued the act, or abused their powers in binding the county for the payment of the interest, but pursued its true meaning and intent.

13th. The thirteenth proposition of the defendants is: "That if the said bonds were issued upon an agreement by the company from which they have been purchased, that the defendants should not be called upon to pay the interest thereon, but that the same was to be paid by the company itself until the road was completed, it was an agreement, in effect, that the bonds should bear no interest so far as the defendants are concerned; and the same not being negotiable securities within the law merchant, are subject to all the equities which existed between the original parties, and the holder was bound to inquire before purchasing, and is affected with notice of the said agreement."

The written instruments show the contract of the parties—the parol testimony admitted cannot affect it. What answer would it be, to an action on a note or bond, for the defendant to plead, that when he signed it his co-obligor agreed to lift it, and that he should never be troubled about it? We proceed to the consideration of the fourteenth and the several subsequent propositions:

14th. "That to entitle the plaintiff to recover in this case, he must first have shown an actual subscription in the manner prescribed by the act incorporating the said company, or at least an actual subscription of some sort by the commissioners; and that in the

absence of any subscription, or of the issue and delivery of any certificate of stock by the said company, the issue of the bonds was without authority of law, and the defendants are not liable in this suit."

This proposition cannot be admitted. The bond recites that it was for subscription to the stock. The witness has proved that they were delivered in such payment. Whether there was literally a subscription, or written promise to pay, is of little importance, if it was paid; also whether the county has got a certificate of stock, was a matter with which the holder of the bond had no concern, and is not bound to prove. If the county has no certificate, it can obtain it by suit, if refused. It cannot now plead the negligence of its own agents in the management of its business, to avoid payment of its obligations. For anything that appears, they have it, or can get it, and in absence of proof, the presumption is that they have it.

15th. "That if no subscription was actually made by the commissioners in the manner indicated by the law, no subsequent vote of theirs by proxy, supposing the same to have been duly proved, could cure the infirmity, or operate as an estoppel against the defendants." This has been sufficiently answered in our remarks on the fourteenth proposition. If the bonds were delivered in payment for the stock, there is no infirmity to be cured.

16th. "That taking the papers sued on to be warrants, or certificates of loan, under the act of assembly, it was essential to their validity, as such, that they should be signed by the commissioners themselves, or a majority of them, and attested in the former case by their clerk, and authenticated in the latter by the seal of the county."

To this we answer, that the obligation of the defendant to pay both principal and interest, is to be found in the bonds (as already explained), which are properly executed by the commissioners, and bind the defendants to pay the interest as well as the principal.

17th. "That there is nothing in the act authorizing the said subscriptions to warrant the issue of any other securities than the bonds or certificates of the county therefor, in sums not less than one hundred dollars each, but that, on the contrary, assuming the instruments sued on to be promises or certificates of debt or loan, and to have been otherwise well executed, they are in direct violation of the provision which forbids the issue of any certificates for a less amount than one hundred dollars, and are, therefore, not obligatory on the defendants."

The answer to this proposition is, that the commissioners have issued no other securities than the bonds, and, as already stated, the coupons are made for the convenience of the officers, and as evidence that the holder is the person entitled to receive the interest due on the bond described therein.

This ends the catechism, and, as a result of the whole, the court instruct you, that if you believe the testimony submitted to you by the plaintiff, he is entitled to your verdict, notwithstanding any testimony produced by defendant, and the many legal objections so ingeniously and ably argued.

The jury found a verdict for the full amount of the plaintiff's claim, $1910.70 [which being under $2000, prevents an appeal to the supreme court of the United States].[3]