FRANKLIN HAVEN & another *vs.* GRAND JUNCTION RAILROAD AND DEPOT COMPANY.

A coupon in this form, detached from a mortgage bond of a railroad corporation, viz: "Interest Warrant No. 12. On the first day of July 1856 the X. Railroad Co. will pay to bearer thirty dollars for interest on its bond No. 342. J. S., Treasurer," is negotiable by delivery, and may be enforced against the corporation by any holder in good faith.

Interest coupons due on mortgage bonds of a railroad corporation were detached and pre-sented for payment. The corporation being out of funds, they were paid at its office with money voluntarily supplied for the purpose by D. K., (who was president and a director of the corporation, and its creditor to a large amount,) upon an understanding between him and the corporation that they were not extinguished as against it, but were to be held by him in place of the persons who presented them. These persons had no intention of assigning them to any one, and supposed that they were paid and extin-guished by the corporation in regular course of business. The transaction was designed to maintain the credit of the corporation and protect D. K. as its creditor, but not to en-able it to sell any of its bonds or coupons. The belief however, thereby created, that it was able to pay, and did pay, these coupons at maturity, was held and acted on by an-other corporation in subsequent purchases of the bonds from individual holders of them; but these purchases were made at or below the par value of the bonds and accrued in-terest, and were not made till between eight and nine years afterwards, and then with a view to acquire title to lands which constituted the mortgaged security, and which this corporation had voted to buy. *Held*, that, after a judicial sale of the lands upon fore-closure of the mortgage, D. K. was not estopped to maintain a claim for the amount of the coupons paid by him, with interest from the date of payment, against a surplus of the proceeds of the sale remaining after full satisfaction of the claims of all the other creditors.

A purchaser at a judicial sale of mortgaged land upon foreclosure of the mortgage, who is immediately put into possession of the land and of all claims for the rents and profits, is chargeable with interest on the amount of the purchase money to the time of its pay-ment; and, if possible, the charge may be enforced through the mortgagee, on the set-tlement of his account and in the final decree of distribution.

BILL IN EQUITY, filed January 10, 1865, by the trustees under a mortgage made on July 1, 1850, by the Grand Junction Rail-

road and Depot Company, a corporation under the laws of this Commonwealth ; to ascertain the proper construction of the trust, and praying for authority to sell the mortgaged premises, and for instructions as to the distribution of the proceeds.

It appeared, on the pleadings and agreed facts, that the said premises consisted chiefly of large tracts of land in Boston, and that the mortgage was made to three trustees, of whom the plaintiffs were the survivors, to secure the payment in twenty years, with interest meanwhile, of bonds issued by the corporation, in sums of $1000 each, to the amount of $350,000, bearing interest payable semi-annually, at the rate of six per cent. per annum, on coupons or interest warrants which were attached thereto ; each such bond * and coupon † being in the form printed in the margin.

And it further appeared that, payment of the interest having ceased on or before January 1, 1857, in April following these plaintiffs brought a suit to foreclose the mortgage, and in May

---

* " Grand Junction Railroad and Depot Company. Incorporated by an act of the General Court of Massachusetts, United States of America. Capital, $1,200,000. The Grand Junction Railroad and Depot Company hereby acknowledges itself indebted, for value received, to the holder of this bond, in the sum of one thousand dollars, which sum the company promises and binds itself to pay the said holder on the first day of July eighteen hundred and seventy, with interest thereon at the rate of six per centum per annum, to be paid half-yearly on the first days of January and July in every year, on presentation and delivery of the annexed warrants at the office of the treasurer in the city of Boston. In testimony whereof the said company has affixed its corporate seal at Boston in the Commonwealth of Massachusetts, and the president and treasurer of the said company have hereto subscribed their names, the first day of July one thousand eight hundred and fifty.

[Seal.]          *Treasurer.*   ṵ
                      *President.*

" I hereby certify that this bond is secured by mortgage on real estate in the city of Boston, dated July the first, one thousand eight hundred and fifty, for the sum of $350,000, to Robert G. Shaw, Franklin Haven and Ichabod Goodwin, in trust for the bondholders.

*One of the Trustees.*"

† " $30. Interest Warrant, No.   . On the first day of     , 18 , the Grand Junction Railroad and Depot Co. will pay to bearer thirty dollars for interest on its bond No.   .

*Treasurer.*"

1859 obtained a conditional judgment for possession; that under this judgment they received formal seisin of the premises on July 22, 1859, and continued in open and peaceable possession thereof till the filing of the present bill ; and that thereby the mortgage was foreclosed.

In October 1866 an order was passed by the court, upon the present bill, directing the mortgaged lands to be publicly advertised for sale; and on March 6, 1867, it appearing that the Boston and Worcester Railroad Corporation had offered $521,500 therefor and no higher offer had ever been made, and that it was expedient and for the best interest of all concerned that the offer should be accepted, it was decreed that " on the payment to said trustees by said corporation of said sum " they should convey the premises to it, free of all incumbrances or trusts, and as soon as reasonably might be they should render into court an account of their doings, receipts and expenditures in the execution of the trust, and of all claims upon them arising out of or in any way connected therewith ; " and whereas it appears to the court that the said corporation are the owners and holders of a large number of the bonds of one thousand dollars, each secured by said mortgage, it is further ordered and decreed by the court, that said trustees shall be at liberty to receive, towards and in part payment of said sum of five hundred and twenty-one thousand and five hundred dollars from said corporation, such portion of said bonds held by said corporation as, looking to the safety of the trustees and to the charges upon said fund and all claims against them, shall in their judgment be safe for the protection of themselves and of the interests of all parties concerned, reserving to said corporation, notwithstanding, their rights in the ultimate distribution of said fund in the same manner and to the same share as if said bonds had not been surrendered, and upon such payment being made said corporation shall be let into possession of said lands and of the rents and profits thereof, as from said 6th day of March."

After this decree, the plaintiffs conveyed the premises to the Boston and Worcester Railroad Corporation by a deed in conformity with its terms, dated March 6, 1867, and acknowledging

the receipt of $521,500 as the consideration for the conveyance ; and rendered a report and account, which on July 13, 1867, were referred to William G. Russell, Esquire, as a special master " to state an account of the receipts and expenditures of said trustees in and about their said trust, also of all claims against the said trustees, or to or against any moneys in their hands, or any part thereof ; " to give notice by advertisement of a peremptory day for hearing all persons interested in the trust or making any such claims ; and after such hearing " to report to the court whether any and what of said claims are or are not valid, and whether any sufficient objection is made to said accounts, or to any item therein, by any persons interested therein ; and, at the request of any party interested, to report to the court any or all the facts upon which he shall base his finding on any or all the points or particulars aforesaid, and the evidence offered in relation to any or all of such facts."

Under date of September 14, 1870, the master returned his report, whereby he found that the trustees were chargeable with the sum of $532,323.92 as the fund in their hands for the disposal of the court ; subject to a small diminution on account of certain claims made against them and against the fund ; and subject also to enlargement by addition of interest on the amount of the purchase money of the mortgaged premises, from the date of the purchase by the Boston and Worcester Railroad Corporation to the date of the decree for final distribution.

David Kimball was one of the claimants, and his claim was disallowed by the master, the material parts of whose report relating thereto were as follows :

" Kimball presented three hundred and forty-two of the coupons, being the entire series 12, maturing July 1, 1856, except coupons of " eight bonds specified, " and claimed that the same should be allowed in full out of the balance in the hands of the trustees ; and in regard to this claim I find the facts thus : Kimball was, at and prior to July 1, 1856, president and director of the Grand Junction Railroad and Depot Company, and continued to hold the office of president until January 13, 1865, and the office of director until May 31, 1865. He was also on July 1,

1856, a creditor of said corporation to a large amount. At that date, the corporation, as was known to him and to the other directors and officers thereof, was unable to pay the coupons then maturing, and he, with George A. Whitney, now deceased, who was also then a director and creditor of the corporation, agreed with each other, with the knowledge of the treasurer and other directors of the company, to furnish the money for said coupons, each furnishing one half thereof, for the purpose of preserving the credit of the company and protecting their own interests as creditors thereof. At the time for payment of said coupons, William C. Barstow, now deceased, then manager or superintendent of the company, attended at his desk, which was in the outer office of the corporation, through which was the entrance to the inner office, occupied by the treasurer; and as these coupons were from time to time presented, the amount thereof was paid to the several parties presenting them, by Barstow, out of moneys furnished him by Kimball and Whitney in pursuance of their said agreement. All previous coupons had been paid by the treasurer at his inner office; but otherwise than as results from this fact no intimation was given to any of the holders of said bonds or coupons, and there is no fact in the case affecting them with notice, that there was any difference in this transaction from the previous ordinary payments of coupons, or that the company was not able to pay or did not pay said coupons, or that Kimball and Whitney were purchasing or desirous to purchase the same. Said coupons were delivered by Barstow to Kimball and Whitney, one half to each; and shortly afterwards Whitney transferred his half to Kimball in payment of a preëxisting debt. Kimball has ever since held said coupons in his possession, and on March 30, 1858, made a demand for payment thereof upon the treasurer of the company, but no action was ever taken at any time by the corporation or its board of directors in regard to these coupons, and no entry relating thereto appears upon the books of its treasurer. Subsequently to July 1, 1856, the corporation continued for some months to carry on its business, and received considerable sums of money, chiefly by negotiating its notes, and in part by loans from Kimball, and also made payments of its notes and of loans made

to it by Kimball; but no money has ever been paid to said Kimball on account of such coupons."

" I find that," after the conditional judgment in the suit brought by the trustees to foreclose the mortgage, " the directors and a committee of stockholders of the Boston and Worcester Railroad Corporation, duly empowered, authorized the purchase of the lands mortgaged to said trustees, at the price of $350,000; that the president of said corporation, with a view to acquiring the title to said lands at that price, purchased from time to time such bonds as could be from time to time procured in the market at $1000 for each bond with the coupons attached, the first of said purchases being made about March 1, 1865; that subsequently, by vote of November 12, 1866, the directors authorized the purchase of bonds at a higher price; and that in several instances on or about February 26, 1867, bonds were purchased at par and accrued interest, but not including the interest due July 1, 1856."

" I find that the trustees had notice of the claim made by Kimball to hold these three hundred and forty-two coupons, as early as January 1, 1860, and that on May 29, 1865, formal notice thereof was given by him to them by letter of that date; but that the trustees did not believe in the validity of the claim; and I find that the trustees have in no respect altered their position, or determined their action, under any mistake as to the fact, or want of knowledge of the fact, that Kimball claimed to hold said coupons as against the corporation and under the mortgage.

" I find, upon the whole evidence before me, that Kimball and Whitney advanced said money for said coupons with the design and purpose of purchasing and holding the same as a claim against the Grand Junction Railroad and Depot Company, and under said mortgage as secured thereby; but also with the design and for the purpose of thereby preserving the credit of said corporation, and of producing the belief that said corporation was able to pay and did pay said coupons, but without any design thereby to effect the sale or induce the purchase of any of said bonds or coupons. I find that such belief was in fact produced, and was acted on by the Boston and Worcester Railroad Corporation in their purchase of the bonds secured by said mort-

gage ; and being of opinion that, upon the facts, Kimball cannot now be permitted, as against the said company, to deny that the said coupons are paid and extinguished, and to set up a claim thereon to share in the proceeds of the sale of the mortgaged property, I disallow the claim of said Kimball."

With regard to the question of interest, the master found and reported as follows :

" The claimants to the fund, holding coupons which have been allowed by me, other than the Boston and Worcester Railroad Corporation, made no claim for interest upon such coupons ; but they claimed that the Boston and Worcester Railroad Corporation were chargeable with interest upon the amount of the purchase money of the mortgaged premises from the date of the purchase, and that such interest should be charged to them by the trustees and credited in the trustees' account, or that the trustees should be charged with interest as having invested the purchase money from the time of sale by loaning it to the said corporation. The Boston and Worcester Railroad Corporation objected to this claim, and claimed to have paid to the trustees a large portion of the purchase money under the decree of the court at the time of purchase.

" In regard to these claims, I find that said trustees, under the decree of the court in this cause, of March 6, 1867, made sale and conveyance to the Boston and Worcester Railroad Corporation of the mortgaged premises on May 14, 1867 ; that at the date of such conveyance the said corporation deposited with them, and said trustees received, as authorized by said decree, 243 of said first mortgage bonds, with 7274 coupons thereto attached, of which 4873 coupons were overdue, and 2401 were not yet due, being all the bonds and coupons then held by said corporation ; that at that time the said corporation executed a bond or indenture with the trustees, a copy whereof was admitted by me in evidence, the counsel for said corporation objecting thereto," in which indenture it was agreed that the corporation should carry on and conduct in the name of the trustees all pending and future controversies that might arise in relation to the trust or the trust fund, including the final distribution of the fund, and should en-

ter into possession and enjoyment of all the trust property ; " that upon the execution of this indenture said corporation was put into possession of the mortgaged premises and of all the outstanding claims for rents and profits thereof which had accrued while the same were held by the trustees ; and that said corporation has ever since remained in possession of the premises conveyed.

" Upon these facts I find that, upon an equitable adjustment of the claims of said corporation and said coupon holders, the Boston and Worcester Railroad Corporation is properly chargeable with interest upon the amount of the purchase money from May 14, 1867 ; and as said corporation are claimants of so large a portion of the fund that such charge of interest can be enforced in settlement of the trustees' account and through the final order for distribution, I find that the trustees should be charged in the account as having collected the whole amount of the purchase money, $521,000, on May 14, 1867, and as having received interest thereon from that date to the date of the decree for final distribution, and that in such distribution the Boston and Worcester Railroad Corporation should allow and receipt for the amount of such interest as having been already received by them. I further find that the claim of said Boston and Worcester Railroad Corporation upon the bonds and coupons held by them should be made up as of the date of said sale and conveyance on May 14, 1867."

Kimball alleged exceptions to the master's report, on the ground, among others, that " he ought to have found that the said Kimball is not estopped to deny that the said three hundred and forty-two coupons of July 1, 1856, are paid and extinguished, and to set up a claim thereon to share in the proceeds of the sale of the mortgaged property."

The trustees, and the Boston and Albany Railroad Company, which, pending these proceedings, had succeeded to all the rights and liabilities of the Boston and Worcester Railroad Corporation, also alleged exceptions thereto, on the ground that the master's findings that they were respectively chargeable with interest were contrary to law and unwarranted by the facts, and also " because any allowance is made to persons holding coupons detached from the bonds, while these exceptants aver that the whole amount to

be distributed ought to be divided among the holders of bonds to which the interest represented by the coupons is only an incident."

The case was heard by the chief justice on the report and exceptions, and reserved thereon for the determination of the full court.

*J. P. Converse & D. P. Kimball,* for the claimant Kimball.

*G. S. Hale,* for the trustees and the Boston & Albany Railroad Company.

AMES, J.* The mortgage given by the Grand Junction Railroad and Depot Company to the plaintiffs, to secure the payment of three hundred and fifty bonds of that company, of one thousand dollars each, with coupons for the payment of interest semiannually, has been regularly foreclosed; and the mortgaged property, under a decree of this court, has been sold and converted into money. The proceeds of the sale were sufficient to pay the entire debt due at the time of the entry for breach of condition, together with all the coupons that have become payable since that time, and to leave a considerable surplus in the hands of the plaintiffs, who were the trustees and mortgagees. The claim of David Kimball, to charge the funds in their hands with the payment of certain of the coupons of which he is the holder, has been disallowed by the master, and the case comes before us upon Kimball's exceptions to that portion of the master's report.

We have no doubt that coupons, such as are described in the report, when detached from the bonds to which they originally belonged, are negotiable by mere delivery, and may be enforced against the corporation by a *bonâ fide* holder, who has no interest in, and is not able to produce, the original bonds. *Thomson* v. *Lee County,* 3 Wallace, 327. *Beaver Co.* v. *Armstrong,* 44 Penn. State, 63. They are still a part of the mortgage debt, and the holder, upon a foreclosure of the mortgage, is entitled to share in the distribution *pro rata* with the holders of the remainder of the debt. *Miller* v. *Rutland & Washington Railroad Co.* 40 Verm. 399. As Kimball is the holder of a large number of the coupons of July 1, 1856, and as the case finds that nothing has been paid to him upon them, he is entitled to have them considered

---

* COLT, J., did not sit in this case.

and allowed as a part of the mortgage debt, unless the circum-stances and manner in which they came to his hands furnish some legal reason to the contrary.

The master says in his report, that, in taking up these coupons, it was the design and purpose of Kimball to purchase and hold them as a claim against the corporation, and as secured by the mortgage ; but that he had the further purpose of preserving the credit of the company, and of producing the belief that it was then able to pay, and did pay, its coupons ; the said Kimball being at that time the president and a director of the company, and also a creditor to a large amount. He adds, however, that the transaction was without any design to effect the sale or induce the purchase of any of said bonds or coupons. It is true that the per-sons who presented the coupons at the counting-room of the com-pany had no intention of assigning them to any party, and un-derstood that they were paid and extinguished in the usual and regular course of business. But as between Kimball and the company itself, it was understood that they were not extinguished, and that he had taken the place of the persons who had presented them for payment. As between him and the company, this was an allowable arrangement, and a legitimate mode of furnishing pecuniary aid to the company, changing the form but not increas-ing the amount of its actual debt.

The only parties who could have any right to object to this pro-ceeding would be the other creditors of the company, to protect whose rights the mortgage was given. If the security had proved insufficient to pay the entire debt, the other mortgage creditors might say that, when the coupons of July 1, 1856, were given up, they were understood to be paid and cancelled ; that they were presented to the treasurer at the usual place and in the usual manner, for payment and not for assignment; and that Kimball, having taken part in a transaction which appeared and was understood to be a payment, is estopped now to come for-ward as a purchaser and assignee, and thereby diminish the divi dend which the other creditors, whose claims were covered by the mortgage, were entitled to receive. But this we think is as far as any estoppel *in pais* can go, as a oar to Kimball's claim ; and

we do not see that any of the bondholders or other mortgage creditors is in a position to object to the claim on that ground. The master has reported, it is true, that the belief that the company in July 1856 was able to pay and did pay the coupons that then fell due, was produced and acted upon n the case of the Boston & Worcester Railroad Corporation. Yet it also appears that their purchase of the bonds began at a much later period, namely, March 1, 1865 ; that they had voted to buy the mortgaged property at the price of $350,000 ; that their purchase of the bonds was with a view of acquiring the title to the lands ; and that they bought most of the bonds at or below par without interest. As the security has proved sufficient to pay the entire debt, principal and interest, none of the bondholders can be said to have suffered any loss or inconvenience from the mode in which the coupons of July 1856 were disposed of, or has any reason to object to Kimball's claim upon those coupons against any balance that may remain after the payment of the other mortgage creditors. He acquired no advantage, and they sustained no injury, from it, that could furnish any ground for an estoppel.

Our conclusion therefore is, that the claim of David Kimball for the amount of the coupons ought to be allowed, as a charge against such funds in the hands of the trustees as may remain after the payment of the other mortgage creditors and other claims allowed by the master.

We also think, for the reasons given by the master, that the trustees should be charged in the account as if they had collected the whole amount of the purchase money, $521,000, on May 14, 1867, and as having received interest thereon from that date to the date of the decree for final distribution. The Boston and Worcester Railroad Corporation, the purchasers of the mortgaged premises, were put into possession of the premises, and of all the outstanding claims for rents and profits thereof that had accrued while the same were held by the trustees. Upon an equitable adjustment of the claims of that corporation and the coupon holders, the railroad corporation is properly chargeable with interest upon the amount of the purchase money from the date of the purchase ; and the charge of interest can be enforced in set-

tlement of the trustees' account, and through the final order for distribution.

With regard to the claim on the part of Kimball for interest, we think that it is well founded and should be allowed. He claims it not as an incident of the coupons themselves, and not upon the ground that unpaid coupons are for that reason on interest, but on the ground that they were taken up by him at maturity at the request of the corporation and for its convenience, so that in fact the transaction was a loan of the entire amount from him to the corporation, and should bear interest like any other case of the forbearance of payment. As the fund proves to be sufficient for the payment of this and all previous claims, we see no reason why it should not be so applied.

The exceptions filed on the part of Kimball are therefore sustained; and a *Decree is to be entered accordingly.*