EVERT EVERTSON, Respondent, *v.* THE NATIONAL BANK OF NEWPORT, Appellant.

Interest coupons to railroad bonds, payable to bearer at a specified time and place, are negotiable promises for the payment of money, and are subject to the same rules as other negotiable instruments. They are transferable by delivery, although detached from the bonds, and a purchaser, in good faith before maturity, from one who has stolen them acquires a valid title.

The fact that by their terms they are declared to be for interest upon bonds specified by their numbers does not destroy their negotiability when separated from the bonds, or impair the title of one purchasing from another without production of the bonds.

Such instruments are entitled to days of grace; and one purchasing after the expiration of the time of payment specified, but before the expiration of the days of grace, is a purchaser before maturity.

Where, however, interest coupons or warrants to such bonds are not made payable to bearer or order, they are not negotiable when separated from the bonds, although the latter are themselves negotiable, and a purchaser of these detached instruments takes them subject to all defects in the title of his transferrer, and therefore subject to the claims of the true owner in case they have been stolen.

As to whether the parties to an instrument can give it a negotiable character with all the incidents pertaining to negotiable paper when it is not, in terms, within the class of instruments known in the law as negotiable, *quære.*

*Myers* v. *York and Cumberland Railroad Company* (43 Me., 232) and *Jackson* v. *Same* (48 id., 147) disapproved.

*Smith* v. *Clark Company* (54 Mo., 58); *McCoy* v. *Washington Company* (3 Wall., Jr., 381) distinguished and limited.

*Evertson* v. *National Bank* (4 Hun, 692) reversed.

(Argued April 6, 1876; decided April 18, 1876.)

Appeal from judgment of the General Term of the Supreme Court in the third judicial department affirming a judgment in favor of plaintiff, entered upon the report of a referee. (Reported below, 4 Hun, 692.)

This action was originally brought against the Indianapolis, Bloomington and Western Railway Company, to collect ten coupons each for the semi-annual interest due April 1, 1871, on a $1,000 bond issued by said corporation, also to collect forty-seven "interest warrants," so called, for semi-annual interest due at the same time upon bonds which said corporation was obligated to pay. The present defendant having made claim to the interest so due and to the instruments, was, by an order of interpleader, substituted as defendant, the corporation paying into court the amount due.

The form of the coupons was as follows:

"$35, The Indianapolis, Bloomington and Western   $35
Railway Company

will pay the bearer, at its agency in the city of New York, thirty-five dollars, in gold coin, on the 1st day of April, 1871, for semi-annual interest on bond No. —.

"A. P. LEWIS,
"*Secretary.*"

The form of the warrants was as follows:

"$35   Interest Warrant for Thirty-five Dollars   $35
upon bond No. — of the Danville, Urbana, Bloomington and Pekin Railroad Company. Payable in gold coin at the office

of the Farmers' Loan and Trust Company in the city of New York, April 1, 1871.

" W. J. ERMENTROUT,

"*Secretary.*"

In each coupon and warrant the blank for No. — was filled with the number of the bond to which it was attached. The bonds, with the coupons and warrants attached, were owned by defendant. The coupons and warrants were detached and sent to New York by express March 31, 1871, for presentation and payment, and on that day they were stolen from the express office, and were purchased by plaintiff at Albany, April 3, 1871.

The referee found that plaintiff was entitled to judgment for the whole amount claimed, and judgment was perfected accordingly.

*Samuel Hand* for the appellant. A paper neither payable to order or bearer nor containing words of similar import showing the makers intended to give it currency is not negotiable. (*Jackson* v. *York. etc., R. R. Co.,* 48 Me., 147; *Wright* v. *O. and Miss. R. R. Co.,* 1 Disney [O.], 465; 1 R. S., 768, § 1; Story on Notes, § 44; *Meyer* v. *Y. and C. R. R. Co.,* 43 Me., 232; *Douglass* v. *Wilkeson,* 6 Wend., 637; *Texas* v. *White,* 7 Wall., 700; *Thomas* v. *Kinsey,* 8 Ga., 44; *Weatherhead* v. *Smith,* 9 Tex., 622; *Chester* v. *Dorr,* 41 N. Y., 279; Edwards on Bills, 131; *Ball* v. *Allen,* 15 Mass., 433; 13 id., 158; *Cory* v. *Davis,* 14 C. B. [N. S.], 370; *Cowie* v. *Sterling,* 6 E. & B., 333.)

*Nathaniel C. Moak* for the respondent. Bonds issued by a corporation under its seal are negotiable securities and pass by delivery. (*Dinsmore* v. *Duncan,* 57 N. Y., 577; *Brainard* v. *N. Y., etc.,* 25 id., 496; *Lindsley* v. *Diefendorf,* 43 How. Pr., 357; *Blake* v. *Bd. Suprs.,* 61 Barb., 149; *Moran* v. *Comrs.,* 2 Black., 722; *Mercer Co.* v. *Hackett,* 1 Wall., 83; *Gilpeke* v. *Dubuque,* id., 176; *Clapp* v. *Cedar Co.,* 5 Iowa, 15; *King* v. *Johnson Co.,* 6 id., 265; *In re Imperial, etc.,*

L. R., 11 Eq., 478; 7 Am. L. Rev., 71; *Huidekoper* v. *Buchanan Co.*, 1 Cent. L. J., 177.) A *lis pendens* will not prevent a *bona fide* purchaser from obtaining a good title to such securities. (*Holbrook* v. *N. J., etc.*, 57 N. Y., 616; *Leitch* v. *Wells*, 40 id., 585; *Lindsley* v. *Diefendorf*, 43 How., 357; *Durant* v. *Iowa City*, 1 Woolw., 69.) Coupons issued with such bonds, after being detached, are treated as bank bills and currency, and may be sued, though the owner be not the holder of the bond. (*Spooner* v. *Holmes*, 102 Mass., 507; 6 Alb. L. J., 235; *Clark* v. *Iowa City*, 20 Wall., 583; *Town of Queensbury* v. *Culver*, 19 id., 84; *New London, etc.*, v. *Ware River, etc.*, 41 Conn., 542; *Nat. Ex. Bk.* v. *Hartf, etc.*, 8 R. I., 375; *City of Memphis* v. *Brown*, 5 Am. L. T. R., 433; 7 Am. L. Rev., 71; *Sewell* v. *Brainard*, 38 Vt., 364; *Miller* v. *R. W. and O. R. R. Co.*, 40 id., 399; *Wohey* v. *Pole*, 4 B. & Ald., 1; *Murray* v. *Lardner*, 2 Wall., 110; *Langston* v. *So. Car. R. R. Co.*, 2 S. C. R. [N. S.], 248; *Comm.* v. *Em. Indust., etc.*, 98 Mass., 12; *Hav.* v. *G. J. R. R. Co.* 109 id., 88; *City of Lexington* v. *Butler*, 14 Wall., 82; *McCoy* v. *Wash. Co.*, 3 Wall., Jr., 381; *Gorgier* v. *Mulville*, 4 D. & R., 641; *Spooner* v. *Holmes*, 102 Mass., 507; *Smith* v. *Clark Co.*, 54 Mo., 58.) Plaintiff having purchased the coupons in good faith and for a full consideration, acquired a valid title. (*Raphael* v. *Gov., etc.*, 17 C. B., 161; *Miller* v. *Race*, 1 Burr., 462; *Worcester, etc.*, v. *Dorchester, etc.*, 10 Cush., 488; *Anon*, 1 Salk., 126; *Snow* v. *Latham*, 2 C. & P., 314; *Wyer* v. *Dorchester, etc.*, 11 Cush., 51; *Birdsall* v. *Russell*, 29 N. Y., 220; *Dutchess Co.* v. *Hackfield*, 1 Hun, 675; *Chapman* v. *Rose*, 56 N. Y., 140; *Seybel* v. *Nat., etc.*, 54 id., 288; *Welch* v. *Sage*, 47 id., 143; *Magee* v. *Badger*, 34 id., 247; *Belmont Bk.* v. *Hoge*, 35 id., 65; *Hotchkiss* v. *Bank*, 21 Wall., 354; *Head* v. *Smith*, 44 How. Pr., 478; *Cothran* v. *Collins*, 29 id., 113; *Comstock* v. *Hannah*, 76 Ill., 531; *Leavitt* v. *Dabney*, 7 Rob., 350; *Murray* v. *Lardner*, 3 Wall., 111; *Bk. of Bengal* v. *McLeod*, 7 Moore P. C., 35; *Bk. of Bengal* v. *Fagan*, id., 61; *Goodman* v. *Simonds*, 20 How. [U. S.], 366; *Hamilton* v. *Vought*, 34 N. J. L. R., 187;

*Phelan* v. *Moss*, 67 Penn. St., 59; *Greve* v. *Schweitzer*, 36 Wis., 556.)

ALLEN, J. But two questions are presented upon this appeal: First, whether the instruments which are the subjects of the controversy are negotiable promises for the payment of money, and therefore subject to the same rules as bank bills or other negotiable instruments, so that one who acquires title in the usual course of business and in good faith, although from one who has obtained them feloniously, may withhold them from the true owner; and secondly, whether they were dishonored at the time of the purchase of them by the plaintiff.

The rule of *caveat emptor* does not apply to negotiable instruments payable in money and to the bearer; and a purchaser in good faith from one who has stolen them acquires a valid title. (*Spooner* v. *Holmes*, 102 Mass., 503; *Birdsall* v. *Russell*, 29 N. Y., 220.)

The coupons of the Indianapolis, Bloomington and Western Railway Company are, in terms, distinct promises to pay the bearer the amount specified therein at a day and place named, and are, within the authorities, promissory notes for the payment of money to the holder, and transferable by delivery, although detached from the bonds to which they refer. The fact that they are declared to be for interest upon bonds specified by their numbers, does not destroy their negotiability when separated from the bond, or impair the title of one purchasing from another without production of the bond. The bonds themselves, although under the seal of the company, are negotiable instruments within the repeated decisions of our courts. (*White* v. *V. and M. Railroad Co.*, 21 How. [U. S.], 575; *Gelpcke* v. *Dubuque*, 1 Wall., 175; *Clark* v. *Iowa City*, 20 id., 583; *Brainerd* v. *New York and Harlem Railroad Co.*, 25 N. Y., 496; *Dinsmore* v. *Duncan*, 57 id., 573; *Haven* v. *Grand Junc. Railroad and Depot Co.*, 109 Mass., 88.) The cases of *Myers* v. *York and Cumberland Railroad Company* (43 Me., 232) and *Jackson* v. *The Same*,

(48 id., 147), holding somewhat different doctrines, cannot be regarded as authority.

The coupons of the Danville, Urbana, Bloomington and Pekin Railroad Company, termed upon their face "interest warrants," are in somewhat different form. Whether they are within that description of property to which a title may be acquired by a *bona fide* transferree for value, notwithstanding a defect of title in the transferror, depends upon their negotiability. If they are not negotiable instruments, and as such representatives of money, the plaintiff acquired no better title than the party from whom he purchased them had; *i. e.*, he took them subject to all the defects of his title and subject to the claims of the true owner. The instruments are not, upon their face, negotiable; they are not payable to any person by name, or his order, or to the bearer, or to the order of a fictitious person. In all the cases to which reference has already been made, the coupons contained distinct promises to pay the bearer the sums named therein at a time and place specified. They were perfect negotiable instruments, independent of the bond from which they had been severed, and were not only negotiable within the statutes upon that subject and the Law Merchant, but were intended by the parties to be negotiable. The negotiability of instruments depends somewhat upon statute. The statute of this State (1 R. S., 768) embodies, substantially, the law, and declares, as understood at the time, what instruments shall be negotiable. To bring an instrument within this statute there must be a promise to pay to the order of the maker, or some other person or his order, or to the order of a fictitious person, or to the bearer, a sum certain absolutely. Whether the parties to an instrument can give it a negotiable character with all the incidents pertaining to negotiable paper, when it is not in terms within the class of instruments known to the law as negotiable, may be questioned. (*Crouch* v. *Credit Foncier of England*, L. R., 8 Q. B., 374.)

It is for the interest of corporations issuing bonds for the payment of money that they should be negotiable; and they

are, ordinarily, made so upon their face; and such bonds, as well as the coupons attached thereto, have been held negotiable when payable to bearer; for the reason that they are promises to pay money in the form which, by the Law Merchant, would make them negotiable as representatives of money, the same as ordinary commercial instruments. (*In re Imperial Land Company of Marseilles*, L. R., 11 Eq. Cases, 478.) While it may be for the interest of the company issuing bonds, with a view to their ready negotiation, that they should be negotiable by delivery, there may not be the same reasons for making the coupons for the installments of interest negotiable when detached from the bonds. The object of the interest warrants before us may be fully accomplished by regarding them as authority to the financial agent of the company to pay the amount named therein upon presentation, although detached from the bonds. It is possible that as between such agent and the debtor corporation the possession and presentment of the interest warrants at maturity would be evidence of an authority to receive the money by the person presenting it, even as against the true owner. But if this be conceded, it does not make them negotiable as between third persons. In this, as in other contracts, its negotiability depends upon its terms; and the rule is, with certain exceptions not applicable to this case, that in instruments for the payment of money, if no one be designed as payee, either by name or as bearer, the instrument is not a promissory note. If these warrants are not promissory notes they are not negotiable; they are neither checks nor bills of exchange. (1 Parsons on Bills, 33, and note; *Brown* v. *Gilman*, 13 Mass., 158; *Gibson* v. *Minet*, 1 H. Bl., 569; *Douglass* v. *Wilkeson*, 6 Wend., 637; *Walrad* v. *Petrie*, 4 id., 575.) In the latter case Judge MARCY was inclined to sustain the action upon the instrument as a promissory note, but was reluctant to establish a different rule here from that which seemed to prevail in England, regarding it as important that the statutes, which were alike in both countries as to negotiable paper, should receive the same construction and be applied in the same man-

ner. In a case like the present it would be unwise, in defer-ence to any supposed intent of the parties or public conven-ience, to depart from the ordinary rules of construction, and give a different effect to different contracts, the same in form and substance. Checks payable to "the order of bills pay-able," or to something impersonal in its character, are regarded as payable to the order of a fictitious person, and therefore within the statute payable to the bearer; and bills and notes payable to the order of one not named but capable of being ascertained, have been also held negotiable within the statute. (*Willets* v. *The Phœnix Bank*, 2 Duer, 121; *Stevens* v. *Strang*, 2 Sand. S. C. R., 138; *United States* v. *White*, 2 Hill, 59.) An instrument payable "to the estate of M. L., deceased," is held not to be a promissory note. (*Lyon* v. *Mar-shall*, 11 Barb., 241.) In *Partridge* v. *The Bank of Eng-land* (9 Q. B., 396) dividend warrants in the form of checks, payable to a particular person, without words making them transferable, were held not transferable by the Law Mer-chant. Two cases are relied upon by the learned counsel for the respondent, in support of his position that these interest warrants were negotiable and within the protection accorded by the Law Merchant to negotiable paper. (*Smith* v. *Clark Co.*, 54 Mo., 58; *McCoy* v. *Washington Co.*, 3 Wall., Jr., 381.) In the case first cited the principal, and the only question really considered by the court, was as to the power of the county to issue the bonds. The only notice taken by the court of the point now made was in the remark that the ques-tion was settled by the case referred to, reported in 3 Wallace, Jr. That case involved other questions, and this was only incidentally made, and was wholly immaterial for the reason that the party claiming to recover upon the coupons pro-duced the bonds upon the trial. Judge GRIER, in his instruc-tions to the jury, charged them that the possession of the cou-pons was *prima facie* evidence of ownership of the bond.

The contract embodied in these interest warrants, so far as any contract can be implied, cannot, upon principle or within any well-considered authority, be made an exception to the

general rules by which the negotiability of promises for the payment of money is determined. , There is no usage or custom proved that would give these warrants a negotiable character, even if custom and usage so recent as one applicable to these instruments would be; could change their legal effect. The plaintiff, therefore, acquired no better title to them than his vendor had and could convey, and the transaction was the same in legal effect as the purchase of any article of merchandise from one having no title or authority to sell.

The coupons of the Indianapolis, Bloomington and Western Railway Company, being promissory notes, they necessarily had all the characteristics of such instruments, and were entitled to the benefit of the days of grace allowable on bills and notes payable at a given day or on time. Having every other quality they cannot be excepted from the general rule which, by commercial usage, sanctioned by law, is applied to every instrument, negotiable in its character, coming within the ordinary definition of bills of exchange or promissory notes. (Story on Bills, § 342; Story on Promissory Notes, § 215; *Hodges* v. *Shuler, supra.*) In the case last cited, the bond itself, to which interest warrants had been attached, was presented at maturity, on the third day of grace, at the place of payment, and upon payment being refused the defendants, as indorsers, were notified of the dishonor, and the court held that they were properly charged; all the judges agreeing that the instrument in suit was a promissory note. It does not seem to have been doubted, that, being a promissory note, although something more, it was within the rule allowing days of grace to commercial instruments of that character. If the coupons were not, for the purposes of days of grace, as as well as for other purposes, promissory notes, but were payable at a day certain without grace, then, at the time of the purchase by the plaintiff, they were overdue, and the holder conveyed no better title to the plaintiff than he had himself. (*Chester* v. *Dorr*, 41 N. Y., 279.) It is probably true that they are regarded and treated as well by promisor as promisee as payable at the day, and paid as if, in terms, pay-

able without grace; but this cannot destroy the character or change the legal effect of the instruments, the interpretation of which is for the courts. It is only as negotiable commercial paper that the plaintiff, as a *bona fide* purchaser, could acquire a good title to the coupons from one having no title thereto; and he can only acquire such title by a purchase under the same circumstances that would give him a title to other commercial paper; and if there were no days of grace for the payment of these coupons they could not be transferred so as to give a good title. Upon the findings the plaintiff acquired a good title to the ten coupons, but for the error as to the other coupons, the judgment must be reversed.

Judgment must be reversed and a new trial granted.

All concur.

Judgment reversed.