48  151<br/>110  570

JENNIE R. HUMPHREY v. WILLIAM G. BECKWITH, MARIA A. BECKWITH AND JOHN T. ELLIOTT.

WILLIAM G. BECKWITH AND MARIA A. BECKWITH v. JENNIE R. HUMPHREY AND JOHN T. ELLIOTT.

*Negotiability—Mortgage by trustee to secure performance of trust.*

A promise to pay "on or before four years from date  *  *  with interest  *  *  not to be paid annually unless the promisor can make it convenient, and other security to be taken in exchange for this note when said [promisor] can realize the same in proper shape from" [a specified source], is not negotiable and its form is sufficient to put an assignee upon inquiry.

Where a creditor causes an arrangement to be made whereby the property of his debtor is conveyed to a trustee to enable him to plat and sell it and out of the proceeds pay off encumbrances and the creditor's claim, and the trustee gives the creditor a promise, in the form of a note, to pay the amount of the debt within a certain time, with a stipulation that other security be taken in exchange for the note when he can realize it from the property, and farther secures the payment or performance of these conditions by a mortgage, the creditor has no equity to enforce the security if the trustee did not abuse his trust and was not negligent and if he could not obtain the means from the property in his charge.

Appeal from Kent. Submitted Jan. 25. Decided April 19.

BILL of foreclosure, and CROSS-BILL for cancellation of securities. Bill dismissed and prayer of cross-bill granted. Affirmed.

*Godwin & Earle* for Humphrey.

*R. W. Butterfield* for Beckwiths. A note is not negotiable if not made payable in money (Comp. L. p. 515) or if the right is afterward given to pay in some other medium : 1 Dan. Neg. Inst. §§ 55, 59 ; 1 Pars. N. & B. 45 ; 1 Pars. Cont. 249 ; or where it is in the alternative and the choice is with the debtor, so that it is not an agreement to pay absolutely : *Dinsmore v. Duncan* 57 N. Y. 578 ; *Jones v. Fales* 4 Mass. 252 ; *Little v. Phenix Bank* 2 Hill 427 ; *Fralick et al. adm'r. v. Norton* 2 Mich. 130 ; *Brooks v. Hargreaves* 21 Mich. 259 ; *Lamb v. Story* 45 Mich. 488 ; *Smith v. Van Blarcom* id. 371 ; 1 Pars. N. & B. 39–45 ; *Ex parte Tootell* 4 Ves. 372 ; *Stults v. Silva* 119 Mass. 139 ; *Way v. Smith* 111 Mass. 525 ; *Miller v. Poage* — Ia. —— ; *Hubbard v. Mosely* 11 Gray 170 ; *Seacord v. Burling* 5 Den. 444 ; *Baird v. Underwood* 74 Ill. 177.

MARSTON, J. The original bill of complaint was filed for the purpose of foreclosing a mortgage executed by Beckwith and wife to secure the payment or performance of a certain instrument given to John T. Elliott and by the latter assigned to the complainant Humphrey. A copy of the so-called note and conditions of the mortgage will be found in a note herewith.* The cross-bill was filed for the purpose of having the security cancelled, and on a hearing upon

---

*$1532.90.          GRAND RAPIDS, June 5th, 1875.

On or before four years from the date hereof for value received I promise to pay to John T. Elliott or order fifteen hundred and thirty-two and 90–100 dollars, with interest on the same at the rate of ten per cent. per annum, interest not to be paid annually unless the said Beckwith can make it convenient, and other security to be taken in exchange for this note when said Beckwith can realize the same in proper shape from the Mary A. Chubb homestead. This note is secured by a real estate mortgage bearing even date herewith.

WILLIAM G. BECKWITH.

pleadings and proofs, the original bill was dismissed and the relief prayed for in the cross-bill granted.

A careful study of the record satisfies us that the defendant Beckwith's version of the transaction under which the instruments in question were given is correct; and that the same is truly set forth in the agreement of June 1, 1875, between Beckwith and Mary A. Chubb, a copy of which is given herewith. *

---

*These articles of agreement made and entered into this first day of June, in the year of our Lord one thousand eight hundred and seventy-five, by and between William G. Beckwith, of the city of Grand Rapids, county of Kent, and State of Michigan, party of the first part, and Mary A. Chubb, of the same place, party of the second part, witnesseth.

Whereas, the above named Mary A. Chubb, party of the second part hereto, did, on the first day of June, A. D. 1875, by her warranty deed, by her duly executed under her hand and seal, and by her properly acknowledged, for the consideration price of ten thousand ($10,000) dollars to her in hand paid, by William G. Beckwith above named and grantee in said deed named; duly grant, bargain, sell, remise, release, alien, confirm and convey unto said William G. Beckwith, his heirs and assigns, forever, all that certain lot, piece or parcel of land situate, lying and being in the city of Grand Rapids, county of Kent and State of Michigan, known and particularly described as follows, that is to say: Lot number ten (10) of J. F. Chubb's addition to the city of Grand Rapids, Kent county, Michigan, and according to the map or plat thereof of record in the office of the Register of Deeds of said Kent county, Michigan, together with all and singular the hereditaments and appurtenances thereunto belonging or in anywise appertaining, etc., etc., reference to which deed so executed and acknowledged, and of record in the office of the Register of Deeds of said Kent county, Michigan, in liber — of Deeds, on page —, being had for a particular description thereof the same fully appears.

And whereas further, there is a mortgage upon said described premises, executed and delivered by said Mary A. Chubb to one Henry W. Hinsdale, of said city of Grand Rapids, Mich., bearing date on the first day of June, A. D. 1875, to secure payment of the sum of six thousand dollars on the first day of June, A. D. 1879, together with interest thereon at the rate of ten (10) per centum per annum, payable semi-annually; which said mortgage is of record in said office of the Register of Deeds of said Kent county, Michigan, in liber — of Mortgages, on page —.

And whereas further, said conveyance of said land and premises by said Mary A. Chubb to said William G. Beckwith, was made subject to said mortgage and payment thereof, principal and interest according to the terms thereof, and the said Beckwith accepted such conveyance, assuming, covenanting and agreeing to pay the same principal and interest at maturity.

Now therefore, and in consideration of the sum of one dollar, and other good and lawful considerations, the said William G. Beckwith receiving and to him in hand paid, (receipt of all which is hereby by said Beckwith admitted,) by said party of the second part, the said William G. Beckwith party of the first part does hereby covenant and agree to pay any and all encumbrances or encumbrance of whatever name, nature or kind, principal and interest and any and all taxes, levies or

The property of Mrs. Chubb was conveyed to Mr. Beckwith to enable him to plat and sell the same, pay the encumbrances thereon and Elliott's claim out of the proceeds thereof, and the balance if any to Mrs. Chubb, and for all this Mr. Beckwith was to receive a commission of ten per

assessments whenever the same shall become due and payable, and especially said mortgage to said Henry W. Hinsdale hereinbefore described, principal and interest at maturity. Also that he will pay in full the claim of John T. Elliott, against said lot and premises, be the same more or less. And to that end and with that view and purpose, that he will, at the earliest possible time, sell and convert said land and premises, in whole or in parcels for the best possible price and prices, upon the best possible terms, faithfully and according to his best judgment, for the best interest and good of the said party of the second part, and all concerned. ' That he will keep just and true accounts of all expenses and disbursements and payments by him made in and about said business, and of all moneys by him therefor or for any portion thereof received, and in case it shall for any reason happen that he shall or cannot sell said land and premises, or any portion thereof, he will re convey said unsold portions of said premises to said party of the second part herein, or to whomsoever she may direct, at the expiration of the term of two (2) years from and after this date.

It being the express understanding and agreement of the parties hereto that out of the proceeds of the sale of said land and premises, or such portions thereof as may by him be sold, and not otherwise, said encumbrance or encumbrances, taxes, levies, etc., are by him to be paid.

It is hereby mutually covenanted and agreed by and between the parties hereto that the party of the second part may occupy the house and lot now occupied by her as her residence, as tenant of said party of the first part, up to such time as the same may be sold, when she will at once, without further notice, vacate and surrender said premises to said party of the first part, and said party of the first part may at once re-enter and take possession thereof, for the purpose of disposing of the same, and that she may occupy the same free and clear of and from all rent or rent charge therefor.

And it is further expressly covenanted and agreed by and between said parties hereto that said party of the first part shall and will protect the homestead right of said party of the second part, which she would be entitled to, but for said conveyance by her to said party of the first part as securely for her benefit and interest as possible, and upon sale thereof shall and will account for and pay the proceeds of the same to her.

And it is further covenanted and agreed by and between said parties hereto, that said party of the first part shall receive a compensation of ten (10) per centum upon gross amount of the proceeds of sales of said lands or portions thereof so by him sold, which said party of the second part hereby covenants and agrees to pay him. And farther, that said party of the first part shall be re-imbursed fully, all expenses, payments and disbursements of all and every kind and nature, that he may make or have made in and about said business and the conduct of the same.

In witness whereof the parties hereto have respectively affixed their hands and seals the day and year first above written.

WILLIAM G. BECKWITH,    [SEAL.]<br>
MARY A. CHUBB.        [SEAL.]

In presence of
EMERY WHEELOCK,
H. W. SLOCUM.

cent. on the sales made by him. Beyond this commission and for the purpose indicated Beckwith had no interest in the property. He received no rent or income therefrom, Mrs. Chubb remaining in possession of the premises and enjoying the rents and income derived therefrom, and the property was finally sold upon the Hinsdale mortgage, so that no moneys came into Beckwith's hands therefrom out of which he could pay Elliott's claim. No claim is made that Beckwith abused his trust or that he was guilty of any negligence in his endeavors to sell the property. Elliott was fully cognizant of all the facts, indeed was the prime mover in the whole transaction, so that he could not enforce in a court of equity the security given him.

Is Mrs. Humphrey in any better position? We think not. The so-called note certainly was not negotiable. *Goodenow v. Curtis* 33 Mich. 505.

There are no facts in this case to show that she made any inquiry of Mr. Beckwith before she purchased, or that he said or did anything that should now estop him from setting up such a defense. The form of the note was sufficient to put Mrs. Humphrey on guard, but she seems to have relied upon Mr. Elliott's statements at the time she took the assignment, although evidently having doubts as to the validity thereof and sufficiency of the security.

We are of opinion that the decree must be affirmed with costs.

The other Justices concurred.