562:35 LRA

BROOKE *v.* STRUTHERS.

1. MORTGAGES—PRINCIPAL AND AGENT—AUTHORITY TO COLLECT.
The discharge of a mortgage is not effected by the execution of a renewal mortgage to one authorized to collect the former, and the transfer of the new mortgage by him to a third person in satisfaction of a pre-existing indebtedness.

2. SAME—SECURITY FOR NEGOTIABLE PAPER—PAYMENT.
A mortgagor in a mortgage securing negotiable paper is not justified in dealing with the mortgagee upon the assumption that he is still the owner of the securities, unless he produces them.

3. SAME—NONNEGOTIABLE PAPER—ASSIGNMENT.
Payments made to a mortgagee, either in money or negotiable paper, without notice that the mortgage has been assigned, are good as against the assignee, unless the mortgage was given to secure negotiable paper, which was transferred for value before maturity; but the giving of nonnegotiable paper to the mortgagee under such circumstances will not operate as a payment. *Per* HOOKER and GRANT, JJ.

4. SAME—RIGHTS OF ASSIGNEE.
An assignee of a renewal mortgage securing nonnegotiable paper acquires no valid claim against the mortgagor, where, without the latter's knowledge, the original mortgage had been previously transferred to a third person, in whose hands it is still outstanding.

5. SAME—RECORDING LAWS—BONA FIDE PURCHASER.

Nor can he claim any right under the recording laws super-
ior to the holder of the prior mortgage by reason of the fail-
ure of the latter to record his assignment,—at least where
the sole consideration for the transfer of the renewal mort-
gage was the satisfaction of a pre-existing debt, since that
fact does not entitle him to be regarded as a *bona fide* pur-
chaser for value.

6. SAME—CONSTRUCTION OF INSTRUMENTS.

The terms of a note may be modified and controlled by
an accompanying mortgage.[1]

7. SAME—NEGOTIABILITY—TIME OF PAYMENT.

A provision in a mortgage securing a promissory note,
and referred to therein, that the failure of the mortgagor to
pay any tax or assessment upon the mortgaged premises
for 30 days after it is payable shall render the whole debt,
principal and interest, immediately due at the option of
the mortgagee, does not destroy the negotiability of the note.
HOOKER and GRANT, JJ., dissenting.

8. SAME—UNCERTAINTY AS TO AMOUNT.

But a provision in the mortgage requiring the mortgagor
to pay all taxes that may be levied upon the lands "or upon
this mortgage" *does* have that effect, where the interest of a
mortgagee in lands was taxable as such under the law in
force at the time of the execution of the mortgage, since the
amount payable to or on behalf of the mortgagee is thereby
rendered uncertain.

Appeal from Charlevoix; Corbett, J.    Submitted
October 24, 1895.   Decided July 31, 1896.

Bill by Fannie I. Brooke against Andrew R. Struthers,
Franklin L. Knapp, and others, to foreclose a mortgage.
From a decree dismissing the bill, complainant appeals.
Reversed.

*Harlow P. Davock*, for complainant.

*Lyon & Dooling*, for defendants.

---

[1] With this case as reported in 35 L. R. A. 536, is a note reviewing
the decisions on the negotiability of a note secured by mortgage as
affected by provisions in the mortgage.

HOOKER, J.   The complainant filed a bill to foreclose a real-estate mortgage given by Struthers to the Michigan Mortgage Company to secure a writing which reads as follows:

"$1,100.00.                                              2,706.
                     "ST. JOHNS, MICH., April 1, 1890.

"For value received, April 1, 1893, I promise to pay the Michigan Mortgage Company, Limited, or bearer, eleven hundred dollars, with interest at seven per cent. per annum, payable semi-annually, which said interest is represented by six coupon notes, one payable at the maturity of each installment of interest, and when paid shall be a voucher for the payment of said installments of interest respectively; all payable at the office of the Michigan Mortgage Company, Limited, St. Johns, Michigan, with exchange on New York.

"It is expressly agreed that, if the interest should be unpaid and in arrears for the space of 30 days, then, from and after the lapse of the said 30 days, the whole of said principal sum, with all interest unpaid, may, at the option of the holder hereof, become and be due and payable immediately thereafter.

"This note is of even date with a certain real-estate mortgage made by the maker hereof to said payee and collateral hereto.
                              "ANDREW R. STRUTHERS."

These were assigned by instrument in writing to the complainant in the following language:

"The Michigan Mortgage Company, Limited, does hereby sell, assign, and transfer unto Fannie I. Brooke all its right, title, and interest in and to a certain mortgage (and note accompanying)," etc.

After the mortgage became due, the Michigan Mortgage Company accepted a new mortgage upon the premises, to take the place of the first; Struthers having no notice of the complainant's ownership, and having made such adjustment in good faith.   Under such circumstances the mortgagor would be protected if he had paid the mortgage, unless the mortgage were given to secure

negotiable paper, which was negotiated before due. 2
How. Stat. § 5687, provides:

"The recording of an assignment of a mortgage shall
not, in itself, be deemed notice of such assignment to the
mortgagor, his heirs or personal representatives, so as to
invalidate any payment made by them, or either of them,
to the mortgagee."

See, also, Jones, Mortg. §§ 479, 791; *Jones* v. *Smith*,
22 Mich. 363, and cases cited.

Any such payment need not necessarily have been
made in money. If it were negotiable paper that could
be enforced against him, or property which had come to
the hands of a *bona fide* holder for value, the same
would be true. But a new promise, unperformed, would
not relieve the mortgagor, so long as it remained in the
hands of the mortgagee, and was not of negotiable char-
acter. But if the mortgage were given to secure nego-
tiable paper, and was itself negotiable because so given,
then the mortgagor would pay at his peril if he did not
require the production of the obligations. Jones, Mortg.
§ 956. Hence, if this paper was negotiable, and was
assigned for value before maturity, and the mortgage
company had no authority to take a new mortgage to
itself in satisfaction, the complainant's claim as against
the defendant Struthers would not be affected. *Markey*
v. *Corey*, 108 Mich. 184.

Again, Knapp claims equities as against the complain-
ant, as assignee of the second mortgage, which, as to its
provisions, was exactly like the first. If he has acquired
rights against Struthers, it is for the reason that the note
is negotiable, because, if it is not, he took it subject to all
equities existing between Struthers and the mortgage
company, on the principle that the assignee of a chose in
action takes it subject to equities existing between the
parties. The principle is elementary, and does not re-
quire the citation of authorities. That it applies in cases
of mortgages where unaccompanied by negotiable paper,
see Jones, Mortg. § 842, and cases cited; *Reeves* v.

*Scully,* Walk. Ch. 248; *Russell* v. *Waite,* Id. 31; *Nich-ols* v. *Lee,* 10 Mich. 526 (82 Am. Dec. 57). That he has a prior claim to the complainant unless his mortgage was valid as against Struthers may not be contended, but, should it be, the same question—*i. e.*, negotiability—is involved. His connection with the matter is as follows: He had done business for many years with the Michigan Mortgage Company, and, becoming dissatisfied with it, a correspondence began October 9, 1890, in relation to his securities which he had procured from the company. This continued until March 21, 1892, when he threatened to employ an attorney, and use force in settling up his matters, which he seems to have expected the mortgage company to attend to. This appears to have been adjusted, and on March 15, 1893, he sent the mortgage company $1,750 to purchase a mortgage of a Mr. Brown, about which there had apparently been correspondence. On March 29, 1893, the mortgage company wrote to Knapp, stating that the Brown mortgage was sold before the draft came, and stating, "Inclosed we hand you our draft, $1,750." This letter described another loan for $1,800, apologized for keeping the draft 10 days after purchasing it for him, and adds: "If this meets your approval, please return the draft to us by return mail, since the loan will commence to draw interest April 1st, and send us another draft for the other $50." On March 30th Knapp wrote, saying that he had just sent Walker $15.75 in coupons, and would inclose the balance of $50, needed to make the $1,800. This was acknowledged April 3d, with the promise to report, and on April 29th Knapp wrote again, having heard nothing, and asked the return of the money if a safe investment could not be made. On May 1st the company wrote, saying that the $1,800 loan had fallen through, and that they "had sent out papers for two loans, one of which—Struthers, $1,100"—they would forward as soon as papers were returned from register's office. On May 4th the Struthers mortgage was sent. On May 8th Knapp asked them for

information about the true situation and value of Struthers' property. This was given. Correspondence continued about the remainder of the $1,800. Knapp kept the Struthers mortgage.

Struthers, as against the company, had a right to have the first mortgage discharged. That was the only consideration for the second mortgage. As long as the company held it, the existence of the first mortgage in the hands of the complainant was a complete defense against it, and, unless the note was negotiable, Knapp took it subject to these equities, and had no greater right to enforce the mortgage against Struthers than the company had, in the absence of an estoppel.

The complainant had asked the company to collect the mortgage, and to let her know when they needed a discharge. The correspondence shows that it was expected that the company would collect the money, and, had payment been made to them by Struthers, we should think, upon this record, that it amounted to a payment to her. On April 21, 1893, complainant wrote the company as follows:

"DETROIT, April 21, 1893.

"E. E. WHITE, Esq.,
　　　"St. Johns, Mich.

"*Dear Sir:* Your favor of the 20th inst. at hand, and noted. We understand from what you say regarding Struthers that he does not expect to pay, for we gave 60 days' notice, and, if he expected to, would have done so by this time. If he wants to renew, can you not place the security with some one else, and get the money for us in that way? We have figured on using this money, and it will inconvenience us if arrangements are not made shortly."

To this she received the following:

"APRIL 22, 1893.

"HOWARD BROOKE, Esq.,
　　　"59 Buhl Block, Detroit, Mich.

"*Dear Sir:* Replying to yours of 21st, I acknowledge receipt of the circulars inclosed therein. In reference to

Struthers, would say that I see I did not make myself clear to you. We have already sent renewal papers to Mr. Struthers to take up your loan, having placed it with other parties, it being exceedingly choice; and as soon as the papers are in we will remit to you for same. We think it will be a matter of no great delay. We notified him when you notified us, that the same must be adjusted at once.

"Respectfully,
"THE MICHIGAN MORTGAGE COMPANY, Limited,
"By E. E. WHITE, Treas."

After repeated solicitations, she received the interest due at the maturity of the mortgage, but nothing more. It is contended that she authorized the company to take the course it did, and that Knapp is therefore protected against her claim. We think this is not deducible from the record. It did not need authority from Mrs. Brooke to authorize Struthers to give, or the company to take, a new mortgage for any purpose of their own; and under our view of the facts, if such mortgage had produced the money, and it had come to the hands of the mortgage company as the result of the giving of the mortgage and its purchase by Knapp, we should consider the complainant bound by it, and Struthers discharged, for the reason that we think that the mortgage company was authorized to collect the obligation. But such was not the fact. The company received the money on March 15th, which was a month before the mortgage assigned to Knapp was acknowledged, and a month and six days before the letter suggesting a loan as a means of getting her money was written by Mrs. Brooke. It was thenceforth Knapp's debtor. The money was not sent to buy this mortgage, and we find nothing to satisfy us that it was in the hands of the company at the time the mortgage was given or assigned. On the contrary, we are convinced that the mortgage was sent him because of his importunity, and that the money had been otherwise disposed of, or it would have been sent to complainant to satisfy her, thereby adjusting the whole matter.

We will next consider the effect of the recording act. At the time that Knapp received his mortgage, the complainant's assignment had not been recorded. Knapp had a right to suppose that the mortgage was still owned by the mortgage company, and, if he can be considered a *bona fide* purchaser for value, he is within the protection of the recording act (2 How. Stat. § 5683). Any such claim would, of necessity, be based upon the failure of the complainant to record her assignment under 2 How. Stat. § 5683. As he received it upon a pre-existing debt, he was not a *bona fide* purchaser within this act, under the case of *Schloss* v. *Feltus*, 103 Mich. 525, unless he was the purchaser of negotiable paper. Hence the conclusion that, whatever view may be taken of the case, the question of negotiability must govern the case.

We may deduce the following propositions from what has gone before: Struthers' defense of payment by giving the second mortgage was complete, unless (1) the first note and mortgage were negotiable; (2) Knapp had not a valid claim against him for any reason. Knapp has not a valid claim against Struthers unless the second note was negotiable, for the reason that the note and mortgage were invalid in the hands of his assignor. Knapp has not a valid claim against the complainant unless the second note was negotiable, for the reason that his pre-existing debt due from the mortgage company is not a sufficient consideration to constitute him a *bona fide* purchaser for value.

We will next consider the question of negotiability. A mortgage, executed simultaneously with a note, is a part of the contract, and they are to be construed together. Jones, Mortg. § 71; Daniel, Neg. Inst. § 156. This is but the recognition of a rule of general application that applies to all contemporaneous writings. And where a note is secured by a mortgage, and there is a provision in the mortgage not contained in the note, it will control. Daniel, Neg. Inst. § 835. The case of *Goodenow* v. *Curtis*, 33 Mich. 505, is a case depending

upon this principle.    A defense of fraudulent alteration of a promissory note by the insertion of the words "or bearer" was interposed.    Ordinarily such alteration would invalidate the instrument, but it was held that it did not, because it did not change the effect of the note in any material particular, inasmuch as by the terms of the mortgage, to which the note referred, certain conditions which might excuse payment, or change and fix the time of maturity, took away any negotiable character the note might otherwise possess.    See, also, *Humphrey* v. *Beckwith*, 48 Mich. 151; *Elmore* v. *Hoffman*, 6 Wis. 71; *Norton* v. *Kearney*, 10 Wis. 443; *Goodwin* v. *Nickerson*, 51 Cal. 169; *McCroskey* v. *Ladd*, 96 Cal. 455.    In *Waples* v. *Jones*, 62 Mo. 440, it was held that a note and a deed of trust securing it must be read together.    See, also, *Brownlee* v. *Arnold*, 60 Mo. 79; *Missouri Pacific R. Co.* v. *Atkison*, 17 Mo. App. 494. In the case of *Noell* v. *Gaines*, 68 Mo. 649, this doctrine was applied, where the reference to the deed of trust, contained in the note, was, "This note is secured by deed of trust, stamped according to law."    On the other hand, there are cases where the contemporaneous writing is invoked to make the note certain, and therefore negotiable.    *Elliott* v. *Deason*, 64 Ga. 67.    See, also, *Muzzy* v. *Knight*, 8 Kan. 456; *Meyer* v. *Graeber*, 19 Kan. 165; *Dobbins* v. *Parker*, 46 Iowa, 357; *Winchell* v. *Coney*, 54 Conn. 24; *Parks' Ex'r* v. *Cooke*, 3 Bush, 173; *Hill* v. *Huntress*, 43 N. H. 480; *Rogers* v. *Broadnax*, 24 Tex. 538; *Wheeler & Wilson Manfg. Co.* v. *Howard*, 28 Fed. 741.

At our request counsel have furnished us additional briefs upon this question of the negotiability of the note and mortgage in question, but we do not find much— if, indeed, there can be said to be any—authority controverting the proposition that the terms of a note may be modified and controlled by the accompanying mortgage. Several cases are cited to the proposition that "when a note secured by mortgage is transferred to a *bona fide*

holder for value before maturity, and a bill is filed to foreclose the mortgage, no other or further defenses are allowed against the mortgage than would be allowed were the action brought in a court of law upon the note." But this proposition does not militate against the contention that the mortgage and note are to be construed together, for a court of law would be bound to notice and apply the rule, and equity might do the same. We have been unable to find any case which holds or implies that the negotiability of a note will not be taken away by provisions which affect the certainties requisite to negotiable paper, contained in a contemporaneous mortgage to which the note refers. We do find cases which hold that a mortgage partakes of the negotiable character of the note so long as the provisions of the mortgage are not inconsistent with negotiability. These may, and probably do, go so far as to imply that provisions contained in the mortgage providing for the method and expense of foreclosure should not affect the negotiable character of the instruments, though that is, in our opinion, an innovation on the rule that distinguishes between a negotiable note and a contract, although the latter may contain the requisites of a negotiable note. *Johnson* v. *Carpenter*, 7 Minn. 176; *Baily* v. *Smith*, 14 Ohio St. 396 (84 Am. Dec. 385).

The importance of this question is great, in view of the prevalence of the practice of issuing coupon bonds secured by mortgages upon railroad and other corporate property, which sometimes contain stipulations and undertakings which, under the rule stated, would make such bonds and coupons nonnegotiable, where they contain reference to the mortgage. But we think this does not justify a disregard of the rule, nor are they exceptions to it. In the case of *McClelland* v. *Railroad Co.*, 110 N. Y. 469 (1 L. R. A. 299), this doctrine was applied to coupons clipped from bonds and sold. The coupon was in the following language, viz.:

"On the first day of [blank month and year] the Elizabeth City & Norfolk Railroad Company will pay to the bearer, at its financial agency in the city of New York, thirty dollars in gold ($30), being six months' interest then due *upon its first mortgage bonds.*

"No. ——                              W. G. Dominick,
                                              "Treasurer."

The bond referred to a deed of trust as security. The court said:

"In determining the character of the coupons in respect to their negotiability, the court is required, we think, to examine each of the securities simultaneously executed by the defendant, viz., the mortgage, the bonds, and coupons, for the purpose of discovering the intent and meaning of the contract thereby made. The reference in the coupons to the mortgage and bonds, and in the bonds to the terms and conditions of the mortgage, clearly, we think, charges the holders of both coupons and bonds with notice of the provisions contained in each of such instruments. * * * If, however, these coupons contained notice to the holders of any facts or circumstances showing that the time of their payment was subject to a contingency over which the holder had no control, and which might postpone their payment indefinitely, then they could not be said to be *bona fide* holders thereof, as the negotiability of the paper would be thereby destroyed. It is undoubtedly the general rule that the bonds of railroad, manufacturing, municipal, and other like corporations, payable to bearer, issued for the purpose of securing loans of money, are, in this country, deemed negotiable, and coupons thereto attached partake of the same character. Ror. R. R. 250; *Evertson* v. *Bank,* 66 N. Y. 14 (23 Am. Rep. 9.); *Thomson* v. *Lee Co.,* 3 Wall. 327; *Commissioners of Knox Co.* v. *Aspinwall,* 21 How. 539. But when such instruments contain special stipulations, and their payment is subject to contingencies not within the control of their holders, they are, by established rules, deprived of the character of negotiable instruments, and become exposed to any defense existing thereto as between the original parties to the instrument. It is essential by such rules that such paper should provide for the unconditional payment to a person, or order, or bearer, of a certain sum of money at

a time capable of exact ascertainment.   3 Rev. Stat. (7th Ed.) p. 2243; Daniel, Neg. Inst. §§ 27, 104; *Evertson* v. *Bank, supra; Frank* v. *Wessels,* 64 N. Y. 155; *Dinsmore* v. *Duncan,* 57 N. Y. 580 (15 Am. Rep. 534).   It would seem, therefore, if these coupons were subject to the condition that the time of their payment could be changed, altered, and postponed from time to time at the option of a majority of the holders of the series of bonds simultaneously issued therewith, it would 'deprive them of one of the essential characteristics of negotiable paper."

A similar holding will be found in *McClure* v. *Tp. of Oxford,* 94 U. S. 429; also in *City of Kenosha* v. *Lamson,* 9 Wall. 478,—both cited in the New York case.   See, also, *Clark* v. *Iowa City,* 20 Wall. 583.

These cases would seem to dispose of any claim that paper secured by mortgages may be treated as primary and the mortgages ancillary in any such sense as to deprive the latter of effect in the construction of the former.   Clearly, they constitute one contract.   All must be read together, and construed together, to ascertain the nature of the agreement, upon which negotiability depends.

If we are right in the foregoing, the negotiability of the note depends in part upon what the mortgage contains, at least so far as to affect all who have notice of the provisions of the mortgage.   Unless we are to admit that the note, being upon its face negotiable, must be so considered regardless of the provisions of the contemporaneous mortgage, to which it refers, we must fix the character of the note by the whole contract.   Suppose that A. gives B. his note, negotiable in form, for $1,000, due in a year, but accompanies it with a contract by which B. is to take $500 if paid within a month, or to allow two years if the maker shall deliver to him 10 cords of wood.   If this appeared upon the face of the note, all agree that the note would not be negotiable.   The contract must be construed with the note.   It limits and qualifies it, and it renders uncertain the amount to be paid and the time when it is due.   By what process of reasoning can

it still be said that the note is negotiable? If it is, then a contract written upon one paper is a radically different thing in effect from the same contract written upon two pieces of paper. This would be none the less true if the provision were incorporated in a mortgage or other simultaneous writing, given as security.

Conceding, then, that a mortgage given as security for a negotiable note, which refers to it, may partake of the negotiable character of the latter, the rule should be limited by the proposition that when the terms of the mortgage so affect the note as to render it uncertain in amount, or in time of payment, or ingraft upon it conditions as to the payment of the amount, it takes away the negotiable character of the note, and leaves its owner or purchaser in the same position as the owner or purchaser of any other chose in action. No good reason is suggested for a contrary rule. If a negotiable note is "a courier without luggage" that passes from hand to hand, and choses in action, which are burdened with uncertainties and conditions, are not, why should the courier who carries his luggage in a trunk be held to be not excluded from the negotiable class because he has no hand baggage? If it be said that the general usage justifies it, we should at least be able to find cases in the books which support such general usage. Yet it is confidently believed that such cannot be found where the language of the mortgage goes beyond provisions for the collection of the security, and undertakes to increase, diminish, or place conditions upon the obligations of the parties, thereby rendering the instrument uncertain. *Dilley* v. *Van Wie*, 6 Wis. 209. In *Chick* v. *Willetts*, 2 Kan. 384, a mortgage was held to extend time of payment two years. See, also, *Round* v. *Donnel*, 5 Kan. 54, and *Dobbins* v. *Parker*, 46 Iowa, 358.

It is plain that adjudicated cases in this and other States hold that mortgages are negotiable when not in contravention of the characteristics of negotiable paper which they secure; and it may be that this is true in

cases where they contain provisions that could not be incorporated in the note itself without destroying its negotiability; *e. g.*, provisions for foreclosing and realizing upon the security, including the application of a portion of the fund to the expenses of foreclosure. May we legitimately go further, and say that provisions intended to increase the value of or preserve the security may be included, and, if so, to what extent, without fastening upon the agreement the elements of a contract, as contradistinguished from a promissory note? A familiar instance would be the provision that the mortgagee may pay taxes or procure insurance, and charge the cost to the mortgagor; or, to go further, a provision that he might keep the premises in repair, or build a levee, and add the amount to the debt. All of these provisions may be proper and valid if the parties choose to agree upon them, but they constitute additional agreements to the promise to pay the debt, calling for the payment of additional sums of money, and they are usually conditional, and most always uncertain in amount; and we are not aware of any such urgent necessity that such instruments be considered negotiable as to justify the disregard of plain and generally recognized principles for its accomplishment, when all agree that the same provisions, if in the note itself, would make it nonnegotiable in any court in the land, except where statutes intervene. We have been unable to find any case which holds that such undertakings do or do not render the note nonnegotiable, except as the general principles discussed appear to lead to the conclusion that they do.

In the present case the mortgages bind the mortgagor to pay all taxes and assessments upon the premises. Now, if this might be said to be a provision to protect the security, and therefore not affecting the note, yet when it provides, in addition, that when the mortgagor shall leave any tax or assessment, valid or invalid, unpaid for 30 days, such taxes and assessments, whether previously paid by the mortgagee or not, and the whole

amount of the principal and interest, shall become due and payable immediately, it injects into the obligation a contract, as much as though the maturity and amount of the obligation were to depend upon the performance of an undertaking to clear a portion of the premises mortgaged, or to open a mine, sink a well, or perform any other act or service agreed upon, calculated to enhance or maintain the value of the security. See *Windsor Savings Bank* v. *McMahon*, 38 Fed. 283 (3 L. R. A. 192); *Siegel* v. *Bank*, 131 Ill. 569 (7 L. R. A. 537); *Hegeler* v. *Comstock*, 1 S. D. 138 (8 L. R. A. 393); *Wright* v. *Traver*, 73 Mich. 493 (3 L. R. A. 50).

The question was expressly reserved in the case of *Littlefield* v. *Hodge*, 6 Mich. 326. Mr. Justice CAMPBELL says:

"It was urged that the note in question here, although payable to order, and without contingency, on a day certain, was not negotiable, because it purported to be according to the condition of a mortgage. *But, as the terms of the mortgage correspond with those expressed in the note, there is nothing to affect its negotiability.* Whatever might be the effect of a repugnancy (upon which we express no opinion), nothing short of that could impair the negotiable character of the security."

Our own decisions will be found to require certainty in negotiable paper. The question has arisen in various ways, and this court has invariably recognized this requirement. In *Brooks* v. *Hargreaves*, 21 Mich. 254, it was held that a note was not negotiable when the criterion of time of payment depended upon the volition of a third party; Mr. Justice CAMPBELL saying that "that must be payable at a time which must certainly arrive in the future, upon the happening of some event or the completion of some period *not depending on the future volition of any one.*" See, also, *Smith* v. *Van Blarcom*, 45 Mich. 373; *Lamb* v. *Story*, Id. 488.

In *Cayuga Co. Nat. Bank* v. *Purdy*, 56 Mich. 7, Mr. Justice CHAMPLIN said:

"The modern tendency to interpolate into such instruments engagements and stipulations not recognized by the law-merchant, affecting the certainty as to the amount due and payable thereon, or the time of maturity, or superadding duties to be performed by the maker, or additional obligations other than the payment of a sum certain at maturity, should be discountenanced, and held to destroy their negotiability, and deprive them of the character of promissory notes, and they should be relegated to the domain of ordinary contracts. *Otherwise it is difficult to see where the line of distinction is to be drawn, and it may be apprehended that in a few years, as one clause after another is ingrafted onto the original terms of such instruments, any contract payable to order, no matter how uncertain or cumbersome its provisions may be, will be held to be negotiable paper,* and the holder entitled to all the benefits and protection of *bona fide* holders of commercial paper."

In *Altman* v. *Rittershofer,* 68 Mich. 290 (13 Am. St. Rep. 341), Mr. Justice LONG mentions with approval the language of Mr. Justice CHAMPLIN just quoted, and adds:

"We see no good reason to depart from this principle. We think the *certainty requisite to the negotiability* of the instrument *must continue until the obligation is discharged,* and that *any provision which before that time* removes such certainty *prevents the instrument being negotiable at all.*"

In *Wright* v. *Traver,* 73 Mich. 495, Mr. Justice MORSE again quotes the language of Mr. Justice CHAMPLIN as the guiding principle. This was a case where the note contained a contract that, if the note was not paid at maturity, the property for which it was given should belong to the payee.

In the case of *First Nat. Bank* v. *Carson,* 60 Mich. 434, the note provided:

"It is expressly understood, and I hereby agree, that the above-mentioned piano shall remain the property of L. & N. Phenix until fully paid for, and that they or their authorized agent or attorney may take possession of

110 MICH.—37.

the same at any time, and for that purpose may enter upon whatever premises it may be on at any time hereafter, sell at public or private sale, and apply the proceeds, after deducting all their expenses in taking possession of and selling the same, towards the payment of this note. I further agree that, in case of any removal from the county of Sanilac, or the sale or removal of the above-mentioned property, then this note shall become due."

It was said by Mr. Justice SHERWOOD:

"I do not think the contract is a negotiable promissory note. A promissory note must be certain as to the sum to be paid and the time of payment. In this case the sum is sufficiently certain, but the time of payment is not. It is made dependent, until the contract matures, upon the fact of whether the defendant shall sell or remove the property for which the contract was made. Such a degree of uncertainty is not allowable in a promissory note."

This case is similar to the one before us. The fatal stipulation was a provision in relation to the security. Its breach made the note due at once. The only difference is that in that case the stipulation was upon the face of the note; in this it is in the mortgage, which is to be construed with the note, and to which the note expressly points the purchaser for information. By reason of this provision, which renders the note uncertain in time of payment, and which ingrafted upon it as a part of it, and to which it was subject, certain contract obligations, the note was rendered nonnegotiable, unless, as already said, the holders of these notes are to enjoy immunity because of some peculiar sanctity arising from the fact that the mortgage, and not the note, contains the stipulation.

Having concluded that these notes are nonnegotiable, it follows that Struthers is liable to the complainant, and is not liable upon the mortgage held by Knapp, for the reason that he took it subject to equities. It would seem

to follow that the mortgage received by Knapp, being void as against Struthers, would be void as against complainant. But, if it could be said otherwise, yet Knapp must fail, for the reason that he has not paid value for it, inasmuch as it was nonnegotiable paper. It being determined that Knapp's mortgage is invalid as against both Struthers and the complainant, there is no reason why complainant should not be entitled to a decree of foreclosure against Struthers, with costs of both courts, and we think it should be so ordered.

GRANT, J., concurred with HOOKER, J.

MONTGOMERY, J. I agree with the conclusions reached by Mr. Justice HOOKER, first, that, as between the defendant Struthers and complainant, the giving of a new mortgage to the Michigan Mortgage Company, Limited, did not discharge the obligation to complainant; and I concur in the result which he has reached in his opinion, and in holding that the mortgage of complainant is a subsisting lien upon the mortgaged premises. I also concur in holding that the note which was given to the Michigan Mortgage Company, Limited, secured by the mortgage assigned to defendant Knapp, was nonnegotiable, for the reason that at the time the note and mortgage were executed—April 1, 1893—the law of 1891 was in force, and the mortgage which was assigned contained the provision that the mortgagor should "pay any and all taxes that may be levied upon the lands herein conveyed, or upon this mortgage, in addition to the payment of interest herein stipulated for." This provision was in addition to an undertaking to "pay all taxes and assessments of whatever nature which may be levied upon said premises above described as soon and as often as the same may become due and payable." In view of the fact that under the law as it then existed the mortgagee was liable to pay the tax upon the mortgage, or upon his interest as mortgagee in the property, these provisions

indicate a purpose by the mortgagor to undertake to relieve the mortgagee of the obligation, and to that extent render the amount payable to or on behalf of the mortgagee uncertain, and the note nonnegotiable. My views as to the negotiability of the earlier mortgage to complainant are sufficiently expressed in the case of *Wilson v. Campbell, infra.*

LONG, C. J., and MOORE, J., concurred with MONTGOMERY, J.