Consterdine v. Moore.

---

J. CONSTERDINE, APPELLEE, v. THOMAS E. MOORE ET UX., IMPLEADED WITH BANK OF MILLER, APPELLANT.*

FILED JULY 1, 1902. No. 10,647.

1. **Note:** INDORSEMENT "WITHOUT RECOURSE": NEGOTIABILITY: INNO-CENT PURCHASER. The indorsement upon a note as follows: "Pay to the order of ............ without recourse," made and

* Rehearing allowed. Judgment below reversed. See opinion, page 296, *post.*

signed by the payee, does not destroy the negotiability of the note in the hands of an innocent purchaser for value, in the regular course of business.

2. **Negotiable Note:** PAYMENT: OWNER: AGENT: BURDEN OF PROOF. If the maker of a negotiable note pays the same to one who does not and can not produce the paper, he thereby assumes the burden of proving that the party to whom he pays the money is the owner of the paper or the authorized agent of the owner to receive the money for him.

3. **Promissory Note:** MORTGAGE: TAXES: INSURANCE PREMIUMS: AGREE-MENT TO PAY: PAYMENT BY MORTGAGEE: DEFAULT OF MORT-GAGOR: DECLARING DEBT DUE: NEGOTIABILITY OF INSTRUMENT. The agreement in a mortgage to pay insurance premiums and taxes on the property mortgaged, will not render the note which it is given to secure non-negotiable; nor will the agreement that if the mortgagor fails to pay such insurance and taxes, the mortgagee may declare the whole debt due and payable at once, or may elect to pay the same and declare the whole debt due.

APPEAL from the district court for Dawson county. Heard below before SULLIVAN, J. *Affirmed.*

*Willis L. Hand,* for appellant.

*Flansburg & Williams, contra.*

SEDGWICK, J.

This action was begun in the district court of Dawson county to foreclose a real estate mortgage. There was a decree foreclosing the mortgage, and the defendant has appealed.

The note and mortgage were executed by the defendant Thomas E. Moore and wife to the Globe Investment Company. The defendant Bank of Miller afterwards bought the mortgaged property subject to the mortgage, and now defends in this case. Soon after the note and mortgage were executed and delivered the payee, the Globe Investment Company, sold the papers to parties who afterwards, and before the note became due, sold and assigned them to the plaintiff. Afterwards the defendant bank paid the mortgage note in full to the original payee, the Globe

Investment Company, but payment has not been made to this plaintiff. The indorsement on the note was: "Pay to the, order of ————— without recourse. Globe Investment Company, J. Lowell Moore, Treasurer."

The first contention is that the plaintiff is not entitled to protection as an innocent bona-fide indorsee under this indorsement. This contention can not be sustained. A blank indorsement, until it is filled up and made special, is equivalent to a bill of exchange payable to bearer. *Everett v. Tidball,* 34 Nebr., 803, 806; 2 Randolph, Commercial Paper [2d ed.], 705, and cases cited. The holder may, at his option, complete the indorsement by inserting the name of the indorsee; and this he can do either before or after he begins suit thereon. *Evans v Gee,* 11 Pet. [U. S.], 80, 9 Law. Ed., 639; *Maxwell v. Vansant,* 46 Ill., 58; 1 Randolph, Commercial Paper, 181. The holder, in filling the indorsement, may write any words over the name of the indorser which do not enlarge his liability as indorser. To fill the blank with the name of the indorsee would restrict the present indorsement, and is not necessary to the negotiability of the note.

The case of *Gaylord v. Nebraska Savings & Exchange Bank,** 54 Nebr., 104, is cited as holding a different doctrine. In that case a stranger to the paper who had the note in his possession as agent of the payee, wrote on the back of the note, "Pay to the order of," and sent it to the payee, advising her to sell the note and invest the proceeds, and representing to her that he would sell the note for her and make a more profitable investment of the proceeds. She thereupon wrote her name under the words indorsed on the note, and returned it to the agent, who deposited the same as collateral security for indebtedness of the copartnership of which he was a member, and did not account to his principal for the proceeds. In an action for conversion, brought against the bank by the payee to recover the value of the note, it was held that instructing

*69 Am. St. Rep., 705.

Consterdine v. Moore.

the jury to find a verdict for defendant was error. This
conclusion might be justified on the ground that in view
of the peculiar form of the indorsement, the circumstances
surrounding the transaction would furnish sufficient
evidence of notice to the bank to require that issue to be
submitted to the jury. In the case at bar the proof is
clear that the payee sold the note in the regular course
of business, indorsed its name thereon, and delivered it
to the purchaser. Under such circumstances, there is no
reason for holding that the incomplete special indorse-
ment written by the payee over its name would affect the
negotiability of the note in the hands of subsequent
holders.

2. It is also contended that the evidence establishes
that the Globe Investment Company, at the time the de-
fendant bank paid the money, "was agent for the plaintiff
to collect and receive the money." The defendant, having
paid the money to one who did not and could not produce
the note, he has thereby assumed the burden of showing
that the party to whom he paid the money was the owner
of the paper, or the authorized agent of the owner to
receive the money for him. The payee, the Globe Invest-
ment Company, sold the paper to John Stuart & Com-
pany, Limited, of England, who in turn sold it to this
plaintiff. There is considerable evidence in the record
in regard to the business relations of the Globe Invest-
ment Company and John Stuart & Company, Limited, and
of the course of business between them, and it is earnestly
insisted that the Globe Investment Company was the agent
of John Stuart & Company in the collection of its loans
in general, and particularly in relation to the loan in
question; and it is shown that John Stuart & Company,
several months before this paper became due, instructed
the Globe Investment Company to make collection of the
paper; but it is not necessary to determine the legal effect
of the relations existing between these two companies,
which was the controlling consideration in *Stuart v.
Stonebraker*, 63 Nebr., 554. The evidence is not contra-

dicted that this plaintiff bought the paper from John Stuart & Company, Limited, on the 27th day of March, 1890, which was but a few months after the note was given, and that he held the paper himself until a short time before the note became due. He then took it to John Stuart & Company, Limited, and instructed them to forward it for collection. They forwarded the note to Kidder, Peabody & Company, who presented it for payment to the Globe Investment Company, and payment was refused. The evidence that this plaintiff was an innocent purchaser of the note, and that he never authorized the Globe Investment Company to make this collection for him, either directly or through John Stuart & Company, Limited, is abundantly sufficient to support the finding of the trial court.

3. The appellant in his brief urges that the note was not negotiable because of agreements contained in the mortgage that the maker should pay insurance premiums and taxes on the mortgaged premises, and that if the maker failed to pay in accordance with the terms of the paper, the mortgagee or its assigns might declare the whole debt due and payable at once, or might elect to pay the taxes and insurance, and even, in such case, might declare the whole debt due.

The note and mortgage, having been executed at the same time, and having been transferred together, they must be construed together, and the provisions of the mortgage relating to the indebtedness itself would have the same effect as though they were incorporated in the note; but the provisions referred to relate only to the security, which is collateral to the indebtedness, and such provisions do not affect the negotiability of the note. There is no agreement to pay the taxes that might be assessed upon the indebtedness itself, nor any other provision which would render the amount of the indebtedness or the time of payment uncertain within the rule adopted by this court. In *Stark v. Olson*, 44 Nebr., 646, it was held that neither the provision to pay attorney's fee, nor that

if default be made in the payment of any interest coupon, the principal sum may at the option of the holder of the note become due and payable without further notice, would affect the negotiability of the note; and the provisions of this note are within the same rule.

The decree of the district court is

AFFIRMED.

The following opinion was filed on rehearing on October 7, 1903:

1. **Mortgage:** NEGOTIABLE NOTE: SECURITY INCIDENT TO DEBT: TRANSFER. A real estate mortgage given to secure a negotiable note is a mere incident to the debt, and is transferred by a transfer of the note. *Webb v. Hoselton,* 4 Nebr., 308.

2. ———: ———: ———: ———: PROVISION IN MORTGAGE AFFECTING INDEBTEDNESS: CONSTRUCTION. A note and mortgage executed and delivered together as one transaction will be construed together. Provisions in the mortgage affecting the indebtedness itself will be construed with the note. *Grand Island Savings & Loan Ass'n v. Moore,* 40 Nebr., 686.

3. ———: ———: ———: ———: ———: ———: SALE AND DELIVERY: PURCHASER: NOTICE. When the note and mortgage and an assignment of the mortgage are sold and delivered together, the purchaser will be charged with notice of the contents of the papers.

4. **Non-Negotiable Note:** TRANSFER: NOTICE: PAYMENT TO ORIGINAL PAYEE. The maker of non-negotiable papers, who has no notice of a transfer thereof, may make payment to the original payee.

SEDGWICK, J.

After the decision of *Garnett v. Meyers, ante,* page 287, a rehearing was granted in this case, and in others involving the same questions. Upon this hearing the plaintiff's attorney has furnished us an able and exhaustive argument upon the questions involved, which has been of great assistance to us. Questions involving the negotiability of notes secured by mortgages and other collaterals have frequently been considered by this court. As early as 1876 it was determined in *Webb v. Hoselton,* 4 Nebr., 308, that "A bona-fide purchaser, for value, of a negotiable promissory note, secured by mortgage, before maturity and

without notice, takes the mortgage as he does the note, discharged of all equities which may exist between the original parties," and also that "The mortgage is a mere incident to the debt and passes with it." These principles have been since adhered to, and so it was said in the first opinion of *Garnett v. Meyers*: "The long established and general rule is that if the note is in form negotiable, a sale and transfer of the note transfers the mortgage." In *Webb v. Hoselton* the security was in the form of a deed of trust. Its sole object was to secure the payment of the note. It does not appear to have contained any provisions affecting or limiting the indebtedness itself, and the effect of such provisions when incorporated in the mortgage or deed securing the note was not considered.

2. That the note and mortgage, when executed and delivered together as one transaction, will be construed together, is not a new doctrine in this state. *Grand Island Savings & Loan Ass'n v. Moore,* 40 Nebr., 686, and *Seieroe v. First Nat. Bank of Kearney,* 50 Nebr., 612, were cited as establishing the proposition as the doctrine of this court. In the former case there is a somewhat extensive discussion of the question, and the conclusion is that the provision in the mortgage that "if the mortgagors should fail to pay the money when due * * * the plaintiff might elect to pay the same and declare the whole amount due and payable at once" gave the holder of the papers the right upon such failure "to elect to declare the whole debt due, not only for the purpose of foreclosing, but also for the purpose of enforcing the personal liability." The conclusion is fortified by the consideration and discussion of authorities from this and other courts, and is considered as settling the law of this state upon that question. In the course of the opinion it is said: "The writer was at first of the impression that where the note is absolute and the mortgage contains such a provision, the provision should be restricted to the remedy by foreclosure, rendering the debt due for the purpose of foreclosure only, but leaving the maturity of the debt for the purpose of enforcing the

personal liability to be determined by the note itself. The adjudications do not, however, bear out this view. In this state it has been determined that in deciding such questions the note and mortgage should be construed together. *Fletcher v. Daugherty,* 13 Nebr., 224; *Lantry v. French,* 33 Nebr., 524. This principle alone would not be decisive of the question, for the reason that, construing the two instruments together, the fact that the stipulation referred to was contained in the mortgage and not in the note, might be taken as an evidence of the intention of the parties to restrict the effect of the stipulation to the enforcement of the mortgage. * * * *First Nat. Bank of Sturgis v. Peck,* 8 Kan., 660, was a suit upon notes under similar conditions. The court there held, in an opinion by Brewer, J., that the notes and mortgage were to be construed together, that all the notes became due upon the failure to pay one, and that the statute of limitations ,ran against all from that time." It may be said that this opinion determines the law of this state to be that conditions inserted in the contemporaneous mortgage which clearly and necessarily relate to the indebtedness itself, and manifestly constitute an attempt to modify or enlarge the terms of the note will be construed with the note, and parties chargeable with notice of such provisions will be bound thereby. This decision, so far as the writer is aware, has not been criticised by this court, but, on the other hand, has been followed as authority, and it is not perceived that parties dealing with commercial paper have cause to complain of such a rule. The rule itself does not trench upon the sacredness of commercial paper under the law merchant. The parties who attempt to make a promissory note mean one thing to one person and another thing to other persons; who want to hold the note out to the world to be that which they have expressly agreed it shall not be; who seek to set it afloat with a string attached which may or may not be used to control the note as their interests may thereafter demand, are responsible for the uncertainty that attaches to such securities. If doubtful,

conflicting, and uncertain provisions in the contract result in rendering such papers non-negotiable, the remedy is to limit the provisions of the mortgage to their proper functions of securing the indebtedness, and define the terms of the indebtedness in the note which is given for that purpose. See, also, *Seieroe v. First Nat. Bank of Kearney,* 50 Nebr., 612; 1 Randolph, Commercial Paper, 198.

3. The note and mortgage, together with an assignment of the mortgage, were sold and delivered to the plaintiff. It is idle to argue that under such circumstances the plaintiff was not bound to take notice of the provisions of the papers which he purchased.

4. The provision of the mortgage which was held to affect the negotiability of the note is copied in full in the first opinion in *Garnett v. Meyers, ante,* page 280. The note and mortgage in this case were identical in their provisions with the papers involved in *Garnett v. Meyers.* Upon this hearing it was strenuously contended, and is ably and exhaustively argued in the brief, that these provisions were not intended to and did not affect the indebtedness itself, but relate only to the security, and ought not, therefore, to render the note non-negotiable.

The question thus presented is not free from difficulty, but we are inclined to adhere to the construction placed upon these provisions upon the second hearing of *Garnett v. Meyers.* After fully providing for the protection of the securities, other conditions are inserted which seem to have no meaning, unless they are construed to protect the holder of the securities against taxes that may be imposed upon these securities. If this is their meaning and intention, there can be no doubt that such conditions render the amount that the mortgagor may be compelled to pay upon the indebtedness, as a part thereof, uncertain; which would clearly render the paper non-negotiable. The papers being non-negotiable, payment to the original payee without notice to the payor of any transfer of the papers will discharge the paper.

The brief and argument of appellant are mostly em-

ployed in the consideration of questions of fact as disclosed by the evidence. But these considerations are unimportant in view of the conclusion reached in the foregoing discussion which requires a reversal of the judgment below.

The judgment heretofore rendered is vacated, the judgment of the district court is reversed, and the cause remanded with instructions to dismiss the case.

REVERSED AND REMANDED.