The Des Moines Savings Bank, Appellant, v. E. O. Arthur, S. H. Arthur, L. E. Turrill, Charles Elliott, E. E. Gallup, Montana Duff and Edwin Trester.

Appeal: Title of cause: STATUTE. The statute providing that a cause shall be docketed on appeal as in the lower court is directory only, and the fact that all parties, except plaintiffs, are designated in the abstract as defendants, while some were defendants in a cross-petition and not the main action, was not ground for dismissal, where the identity of the action and the relation of the defendants thereto was disclosed by the abstract.

Same: TIME FOR TAKING APPEALS. An appeal to the supreme court taken within six months from the entry of judgment is timely, although more than six months may have elapsed since the filing of the decision with the clerk.

Mortgages: FORECLOSURE: DEFENSES. The foreclosure of a mortgage cannot be defeated by any defense not available against the note secured thereby.

Same: BILLS AND NOTES: CONSTRUCTION: NEGOTIABILITY. A note and mortgage executed at the same time and as a part of the same transaction are to be construed together; but this rule does not contemplate that the provisions of the mortgage shall be incorporated into and become a part of the note. Thus the provision in a mortgage that the same shall stand as security for the payment of taxes and insurance, but not containing any promise to pay the same, does not become a condition of the note in such sense as to render the same non-negotiable for uncertainty, as the provision in no manner affects the obligation of the note.

Same: SEPARATE ACTIONS: ELECTION. Separate actions may be brought on a note and mortgage securing the same, unless prevented by some stipulation contained in one or the other; but if prosecuted in the same county at the same time the plaintiff may be required to elect on which he will rely.

**Same:** NEGOTIABILITY OF NOTE. The provision of a mortgage requiring the mortgagor to pay taxes thereon in a certain contingency will not affect the negotiability of the note secured thereby; as the same simply creates the mortgage a lien therefor, and does not entitle the mortgagee to collect such tax as a part of the indebtedness. But a provision of that character in the note itself will render it non-negotiable because of uncertainty in amount.

**Same.** The provision of a mortgage giving the mortgagee the right to declare the entire indebtedness due for a default of the mortgagor will not render the note secured thereby non-negotiable because uncertain as to time of payment; but a provision of the mortgage that the note shall become due and payable at the election of the holder will generally render the note, when construed in connection with the mortgage, non-negotiable.

**Negotiable instruments:** BONA FIDE PURCHASER: NOTICE: EVIDENCE. Where the officer of a bank purchasing a note testified that the transaction was with him and that he had no notice of any defense thereto, the evidence was sufficient to justify a finding that the bank had no notice, although the other officers of the bank did not testify on the subject.

*Appeal from Madison District Court.*—Hon. W. H. Fahey, Judge.

Saturday, October 25, 1913.

On the 6th day of October, 1900, Thomas and Montana Duff executed to A. B. Shriver their promissory note for $1,800 payable on the 6th day of October, 1910, with interest at the rate of 5¼ per cent. per annum payable annually, but, if any part of the principal or interest should not be paid when due, it would bear 8 per cent. per annum. This note was secured by a mortgage executed by the payors on 101 acres of land. On February 10, 1906, the Duffs conveyed the land to Edwin Trester and the latter negotiated a loan with A. B. Shriver in order to take up that mentioned and pay to the Duffs $1,200 on the purchase price. A note for $3,000 was executed to Shriver by Trester and

wife payable five years after date and secured by a mortgage on the land. The $1,200 was received from Shriver and paid over to the Duffs, and Shriver explained that he owned the $1,800 note and mortgage, but that the note was in Des Moines, up as security, and that he would get it in a few days and cancel it. The $3,000 note and mortgage of Trester and wife were assigned to A. B. Anderson, September 22, 1906, and they subsequently conveyed the land to E. E. Gallup and wife, who later conveyed it to E. O. Arthur. The deed of the Duffs to Trestor warranted title except as to the $1,800 mortgage. On June 11, 1901, Shriver assigned the mortgage securing the note for $1,800 to the Security Loan & Trust Company, and this assignment was recorded, and there was nothing of record indicating a reassignment thereof to Shriver or any one else. In the fall of 1909, Shriver negotiated a loan of $1,600 with the Des Moines Savings Bank and executed his note for that amount payable ninety days after date with interest at the rate of 7 per cent. per annum, and as collateral security for its payment hypothecated the note for $1,800 and assigned to said bank the mortgage securing the same. This action was begun by said bank January 6, 1911, praying for judgment on said note of $1,800 against Montana Duff and demanding foreclosure of said mortgage against the land and that it be established as a lien prior to the $3,000 mortgage held by Anderson. Arthur, the owner of the land, was made a party defendant, and he pleaded that the note of $1,800 and mortgage securing it were executed as one instrument, that the terms of the mortgage rendered the note nonnegotiable, that the note had been paid by the transactions mentioned, and that the plaintiff was not an innocent holder. He also filed a cross-petition praying judgment against Turrill, Elliott, Gallup, and Trester on the warranty deeds for whatever amount might be recovered against him on the $1,800 note and mortgage. Montana Duff filed answer alleging that Trester had assumed and agreed to pay

the note of $1,800 and pleaded the same defense as Arthur. A. B. Anderson prayed judgment on the note of $3,000 against the Tresters, Shriver, Elliott, Turrill, and Arthur, and that the mortgage securing said note be foreclosed. Trester answered the cross-petition of Arthur and joined in praying the relief demanded. Shriver filed a disclaimer. Some other matters were in issue not necessary to be mentioned. On hearing, the plaintiff's petition was dismissed and judgment entered on the cross-petition of A. B. Anderson as prayed and decree foreclosing the same. The plaintiff appeals. *Reversed.*

*John A. Guiher,* for appellant.

*Church & McCully* and *J. F. Gallup* and *W. S. Cooper,* for appellees.

LADD, J. This is an action to recover judgment against Montana Duff, on a promissory note of $1,800 given October 6, 1900, and payable ten years thereafter, given by herself and husband to A. B. Shriver, and to foreclose a mortgage on one hundred and one acres of land executed by them to secure its payment. E. O. Arthur, who had acquired the land, was made defendant, as also was A. B. Anderson, who held a note of $3,000 given by Edwin Trester to Shriver February 10, 1906, payable five years after date and secured by a mortgage on the same land. Plaintiff prayed that the lien of this mortgage be decreed inferior to that sued on. Other parties were brought in as defendants to cross-petitions, and S. H. Arthur by amendment to the petition.

I. In printing the abstract, all parties other than plaintiff were designated appellees without indicating their relation to the case other than as defendants or appellees, and this is one of the grounds of the motion of dismissal. It will be noted that the parties defendant were correctly named, but others who were defendants in cross-petitions were included as

1. APPEAL: title of cause: statute.

though parties to the main action. The statute exacts that the cause be docketed as in the court below (section 4108, Code), and this should have been done. But the section, being remedial, is directory, and, inasmuch as. the identity of the action has been preserved and the relation of defendants to the case disclosed in the abstract, there could have been no prejudice and there should not be a dismissal on this ground.

The judge presiding filed an opinion with the clerk November 23, 1911, and service of notice of appeal was not acknowledged until August 7, 1912. As more than six months had intervened, dismissal on this ground is demanded. As time for the purposes of appeal is computed from the entry of decree which occurred February 24, 1912, instead of the announcement of the decision, service of the notice of appeal was in time. *Martin v. Martin*, 125 Iowa 73; *Sievertson v. Paxton-Eckman*, 160 Iowa 662. The record does not bear out the suggestion that there was delay in the final entry because of the trials of issues raised on the petitions of intervention, and, as the record does not disclose that the same attorney represented plaintiff and Anderson, the issuance of execution on the decree of the latter cannot be construed as a waiver of the right of appeal, even were appellee's theory to be adopted. The motion to dismiss the appeal is overruled.

2. SAME: time for taking appeals.

II. The note of $1,800 executed by Montana Duff and husband to A. B. Shriver October 6, 1910, and payable ten years thereafter, was deposited by him with the Des Moines Savings Bank in the fall of 1909 as collateral security, of his note of $1,600 payable in 90 days and the mortgage executed by the Duffs to secure payment of their note duly assigned to said bank. It advanced the face of the note less $28, interest for the period until maturity, and the president of the bank, who negotiated the loan, testified that before making it he ascertained that the mortgage was a first lien on land constitut-

ing ample security for its payment and that he was without knowledge that the note and mortgage had been paid.

The note and mortgage had been paid by the execution of a note of $3,000 to Shriver by Trester and wife, the former of whom having acquired the land, and a mortgage on the land securing the same. Though the $1,800 note and mortgage were not then in Shriver's possession, he procured the same

3. MORTGAGES:
foreclosure:
defenses.

subsequently; but, instead of canceling the one and releasing the other, he negotiated the loan with the bank as stated. As it acquired these for value and without notice, the defense of payment must fail unless the note is found not to be negotiable, for under the decisions of this state foreclosure of the mortgage may not be defeated by a defense not available against the note. *Preston Kean & Co. v. Morris Case & Co.*, 42 Iowa, 549.

The theory of defendants is that the mortgage and note are to be construed together and treated as one instrument, and the following clause contained in the mortgage renders the note nonnegotiable:

Said first party shall pay all taxes and assessments upon said property to whomsoever laid, or assessed, and including personal taxes, and should any reduction be made in the assessment of taxes on said land by reason of this mortgage, and payment thereof required of the mortgagee or assigns, then said mortgagor shall pay the taxes on this mortgage and the debt hereby secured before delinquent; and said first party shall not suffer waste; shall keep all buildings thereon insured to the satisfaction of said second party in a sum not less than two hundred dollars, delivering all policies and renewal receipts to said second party, and shall pay, in case of suit, a reasonable attorney's fee and expenses of continuation of abstract, and all expenses and attorney's fees incurred by said second party or assigns by reason of litigation with third parties to protect the lien of this mortgage. A failure to comply with any one of the agreements hereof (including warranty of title) causes the whole debt to at once become due and collectible, if said second party or assigns so elect, and no

demand for fulfillment of broken conditions nor notice of election to consider the debt due, shall be necessary previous to commencement of suit to collect the debt hereby secured, or any part thereof, or to foreclose this mortgage. . . . All money paid'by said second party or assigns for insurance or taxes shall bear interest at the rate of eight per cent. per annum, payable semiannually, and be a lien on said land under this mortgage.

It is settled, in this state at least, that the note and mortgage, having been executed at the same time and as a part of the same transaction, are to be construed together. *Iowa National Bank v. Carter,* 144 Iowa, 715; *Swearingen v. Lahner,* 93 Iowa, 147. And such appears to be the general rule. *Brooke v. Struthers,* 110 Mich. 562 (68 N. W. 272, 35 L. R. A. 536 and note); 1 Jones on Mtgs. section 71. This is but the application of the familiar doctrine concerning the construction of agreements contemporaneously executed.

4. SAME: bills and notes: construction: negotiability.

But how far under this rule are the collateral agreements contained in the mortgage to be imparted into the note? On the margin of the note were these words: ''This note is secured by first mortgage on one hundred and one acres in Madison Twp., Madison county, Iowa.'' This may have advised the transferee of the security, but did not purport to load the note with any of its particular provisions. The note was complete in itself and, as usual, was given as evidence of the debt and to fix the time and terms of payment. The purpose of the mortgage was to afford security for the payment of the note, and all the conditions in the part quoted, except one, relate to the protection and preservation of the security. These have no bearing on the engagements contained in the note. While the note and mortgage are to be construed together whenever the nature of the transaction becomes material, this does not mean that the provisions of the mortgage are thereby incorporated into and become part of the note.

As said in *Thorp v. Mindeman*, 123 Wis. 149 (101 N. W. 417, 68 L. R. A. 146, 107 Am. St. Rep. 1003).

Construing together simply means that if there be any provisions in one instrument limiting, explaining, or otherwise affecting the provisions of another, they will be given effect as between the parties themselves and all persons charged with notice, so that the intent of the parties may be carried out, and that the whole agreement actually made may be effectuated. . . . The promise to pay is one distinct agreement, and, if couched in proper terms, is negotiable. The pledge of real estate to secure that promise is another distinct agreement, which ordinarily is not intended to affect in the least the promise to pay, but only to give a remedy for failure to carry out the promise to pay. The holder of the note may discard the mortgage entirely and sue and recover on his note; and the fact that a mortgage had been given with the note, containing all manner of agreements relating simply to the preservation of the security, would cut no figure. A pleading alleging such facts would be stricken out as frivolous or irrelevant.

In *Garnett v. Meyers*, 65 Neb. 280 (91 N. W. 400, 94 N. W. 803), Sedgwick, J., in speaking for the court concisely states the rule:

If the terms and conditions of the mortgage are limited to the proper province of the mortgage—that is, to provide security for the indebtedness—its provisions relating solely to the security will not affect the negotiability of the note. If the holder of the note is compelled to pay the taxes or insurance on the mortgaged property to protect the security, and is afterwards allowed to recover the amount so paid in addition to the principal indebtedness, this does not affect the amount of the indebtedness itself. The mortgagee has no interest in the mortgaged property except a collateral and contingent one. The liability for these expenses is upon the mortgagor. If he shirks this responsibility, and compels the mortgagee to assume it, equity allows the mortgagee to add the payment so made to his mortgage. This right has long been established as an essential element of the mortgage itself. It cannot be held

to destroy the negotiability of the note, unless the fact that the execution of the note is accompanied by the execution of a mortgage securing it is to have that effect. This principle applies to all agreements of the mortgagor to preserve the collateral security. It does not affect the rule that the two instruments, when executed at the same time, must be construed together. The provisions contained in the mortgage to protect the securities, which would be implied and enforced upon settled principles of equity, whether expressed in the mortgage or not, cannot be held to render the note non-negotiable.

See, also, *Kendall v. Selby*, 66 Neb. 60 (92 N. W. 178, 103 Am. St. Rep. 697); *Frost v. Fisher*, 13 Colo. App. 322 (58 Pac. 872); *Hunter v. Clarke*, 184 Ill. 158 (56 N. E. 297, 75 Am. St. Rep. 160).

It will be observed that the mortgage contains no promise on the part of the mortgagor to repay mortgagee taxes or premiums for insurance which may have been advanced by him. These are to be a lien on the land and, of course, may be recovered upon foreclosure of the mortgage. The maker of the note does not thereby become liable for payment thereof save as he may be required to pay to redeem his land from the proceedings in foreclosure of the mortgage. The obligation of his note was in no manner enhanced or otherwise affected either as to time or amount of payment. As observed in *Hunter v. Clarke*, supra, "the provisions of the mortgage for the allowance of costs, taxes, assessments, insurance, and attorney's fees apply only in case of foreclosure and do not add to the amount of the note."

A separate action could have been maintained on the note (section 3428, Code) or on the mortgage, unless this is prevented by some stipulation in one or the other, as that execution shall not issue against property other than that mortgaged (*Kennion v. Kelsey*, 10 Iowa 443); but actions on each cannot be prosecuted in the same county at the same time, for, if undertaken, the plaintiff will be required to elect which he will

5. SAME: separate actions: election.

maintain (section 4288, Code). And as the maker of the note did not agree to pay the items of taxes, insurance, and the like in his note, the amount payable thereon has not been rendered uncertain by the terms of the mortgage.

As intimated, one clause in the mortgage was not inserted to protect the security but to place a burden on the mortgagor: ''Should any reduction be made in the assessment of taxes on said land by reason of this mortgage and payment thereof required of the mortgagee or assigns, then said mortgagor shall pay the taxes on this mortgage and the debt thereby secured before delinquent.'' This merely exacted payment by the mortgagor of taxes assessed on the credits owing the mortgagee which, but for this, the latter must have paid. But as pointed out, if not paid by the mortgagor and discharged by the mortgagee, there is no condition entitling him to recover the same as a part of the indebtedness evidenced by the note or otherwise save by enforcing the lien specifically stipulated against the land mortgaged.

6. SAME: negotiability of note.

In this respect, the mortgage differs from that considered in *Garnett v. Meyers,* 65 Neb. 287 (91 N. W. 400, 94 N. W. 803); *Consterdine v. Moore,* 65 Neb. 291 (91 N. W. 399, 96 N. W. 1021, 101 Am. St. Rep. 620), where it was provided that ''the said party of the second part, or the legal holder or holders of said note, . . . may elect to pay such taxes, assessments, . . . and the amount so paid shall be secured by the mortgage and may be collected in the same manner as the principal debt hereby secured, with interest at the rate of ten per cent. per annum.'' In holding that this provision rendered the note nonnegotiable, the court seems to have held that, under this clause, taxes so paid by the mortgagee might be recovered in an action on the note, and therefore the amount payable was uncertain. No one can anticipate precisely what the tax levies of the future will be, and for this reason such a stipulation when contained in a note, renders it nonnegotiable. *Farquar*

*v. Fidelity Ins. etc., Co.,* Fed. Cas. No. 4,676; *Howell v. Todd,* Fed. Cas. No. 6,783; *Walker v. Thompson,* 108 Mich. 686 (66 N. W. 584); *Carmody v. Crane,* 110 Mich. 508 (68 N. W. 268). See, also, *Brooke v. Struthers,* 110 Mich. 562 (68 N. W. 272, 35 L. R. A. 536).

As the provisions of the mortgage in the case at bar did not render the amount payable on the note uncertain, the note cannot be denounced as nonnegotiable on this ground.

7. SAME.

Nor did the clause giving the mortgagee on breach of certain conditions the election to declare the entire indebtedness due. Under the Negotiable Instruments Act, an instrument to be negotiable "must be payable on demand, or at a fixed or determinable future time." Section 3060-1a, Code Supp. This note was payable "on the 6th day of October, 1910." It was certain that the time would arrive when the note would be payable, and the circumstances that it might become payable before that time upon the default of the maker in certain respects at the option of the payee or holder did not affect its negotiability. *Charlton v. Reed,* 61 Iowa 166; *Chicago, etc., Equipment Co. v. Merchants' Bank,* 136 U. S. 268 (10 Sup. Ct. 999, 34 L. Ed. 352); *Hunter v. Clarke,* 184 Ill. 158 (56 N. E. 297, 75 Am. St. Rep. 160); *Mackintosh v. Gibbs,* 81 N. J. Law, 577 (80 Atl. 554, Ann. Cas. 1912D, 163); *Merrill v. Hurley,* 6 S. D. 592 (62 N. W. 958, 55 Am. St. Rep. 859); *Taylor v. American Nat. Bank,* 63 Fla. 631 (57 South. 678); *Barker v. Sartori,* 66 Wash. 260 (119 Pac. 611). See valuable note to *Holliday State Bank v. Hoffman,* Ann. Cas. 1912D, 1.

Decisions to the contrary may be found on both of the foregoing propositions, but our conclusion has the support of the great weight of authority. Appellant relies on *Iowa National Bank v. Carter,* 144 Iowa, 715; but the chattel mortgage securing the note there held nonnegotiable provided that the note should become due and payable at the election of the payee or holder. This, being independent of any default of the maker, left him without protection, and such a clause is gen-

erally held to render the note when construed in connection with the mortgage nonnegotiable, as was decided in the above case. See, also, *Smith v. Marland*, 59 Iowa, 545; *First Nat. Bank v. Bynum*, 84 N. C. 24 (37 Am. Rep. 604) ; *National Bank v. Armstrong*, 25 Minn. 531; *Carroll County Savings Bank v. Strother*, 28 S. C. 504 (6 S. E. 313). Note in which cases are collected, to *Kimpton v. Studebaker Brothers Co.*, 14 Idaho, 552 (94 Pac. 1039, 125 Am. St. Rep. 185, 14 Ann. Cas. 1126). The point was not raised in *Heard v. Dubuque County Bank*, 8 Neb. 10 (30 Am. Rep. 811). Such a condition divests the note of the quality of certainty in time of payment,· for this may be hastened at the option of the maker alone. We are of opinion that the note was negotiable, and, as plaintiff acquired it without notice and for value, that it was not subject to the defense of payment.

III. Only the president of the bank testified to the absence of notice that the note had been paid, and it is argued that, as the other officers might have been aware of this, purchase without notice was not proven. But, according to the witness, the transaction was with him, and, though his evidence may not have established the absence of notice conclusively, it was sufficient to justify the finding that the bank was without notice in acquiring the paper. *Arnd v. Aylesworth*, 145 Iowa, 185; *Bennett State Bank v. Schloesser*, 101 Iowa, 571. Conceding then that Shriver negotiated the papers in breach of faith (see section 3060-a55, Code Supp.), and therefore that burden of proof to show want of notice was on plaintiff (section 3060-a59, Code), such burden was met, and plaintiff rightly held a holder of the note in due course. The cause is remanded for the entry of a decree in harmony herewith.—*Reversed*.

8. NEGOTIABLE INSTRUMENTS : bona fide purchaser : notice : evidence.

WEAVER, C. J., and EVANS, DEEMER, GAYNOR, PRESTON, and WITHROW, JJ., concur.